Herbert Neff et al., Petitioners *v.* Commonwealth of Pennsylvania, Insurance Department, Respondent.

Argued March 5, 1979, before Judges CRUMLISH, JR., ROGERS and MACPHAIL, sitting as a panel of three.

334

*Malcolm H. Waldron, Jr.,* for petitioner.

*Joseph Kenneth Hegedus,* Deputy Attorney General, with him *Norman J. Watkins,* Deputy Attorney General, Chief, Civil Litigation, and *Edward G. Biester, Jr.,* Attorney General, for respondent.

OPINION BY JUDGE ROGERS, April 30, 1979:

Herbert Neff and Lawrence Neff, on behalf of Gibraltar Life Insurance Company, have appealed from an order of the Insurance Commissioner refusing their application that an order suspending Gibraltar's business be lifted. We affirm.

Gibraltar is a domestic stock limited life insurance company which the Commissioner suspended from the transaction of business on October 15, 1973, while its stock was owned by persons other than the present owners, the Neffs. On November 16, 1974, the Neffs submitted a letter[1] to the Insurance Commissioner which sought approval for their acquisition of Gibraltar's capital stock pursuant to Section 337.6 of the Act, 40 P.S. §459.6, which provides, in pertinent part:

(c) There shall be filed with the Insurance Commissioner a statement, signed by the person proposing to make the acquisition, and veri-

---

[1] This letter was apparently accepted as the "acquisition statement" required to be filed under Section 337.6 of The Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, *as amended,* added by Section 1 of the Act of November 25, 1968, P.L. 1086, *as amended,* 40 P.S. §459.6. *See Application of Midwestern Fidelity Corp.,* 26 Pa. Commonwealth Ct. 211, 363 A.2d 892 (1976).

fied by oath or affirmation, which shall contain
the information specified in this subsection. . . .

. . . .

(5) *Such plans, arrangements, understand-
ings and intentions as such person may have for
the future business and management of the is-
suer whose capital stock is to be acquired.* . . .
(Emphasis added.)

The plans, arrangements, understandings and inten-
tions which the Neffs described in their acquisition
statement included Gibraltar's proposal to reinsure
and assume the existing policies of another limited life
insurance company also controlled by the Neffs, Old
Heritage Mutual Insurance Company, and the eventual
dissolution of Old Heritage. The Commissioner re-
sponded to Gibraltar's acquisition statement by letter
dated November 26, 1974, approving the acquisition as
proposed. This response, as Gibraltar's statement,
was principally concerned with the plan by which
Gibraltar would reinsure and assume Old Heritage's
existing policies. The principal feature of Gibraltar's
proposal and the matter in which the Commissioner
was principally interested in approving it was the
planned rehabilitation of Old Heritage for the benefit
of its policyholders.

The Neffs acquired Gibraltar's outstanding capital
stock in January, 1975. There is no clear evidence in
the record that the Neffs took any further steps to ef-
fect a reinsurance and assumption agreement with Old
Heritage until June 1, 1976.[2] On that date they wrote
a letter to the Commissioner in which they stated:

---

[2] At the hearing, when asked why no sample reinsurance agree-
ment was submitted with the letter of June 1, 1976, Lawrence Neff
testified that "one had already been submitted but never acted upon."
However, Mr. Neff could not remember when this sample had been
submitted to the Department. Earlier in the hearing, Mr. Neff had
testified that he had submitted the sample agreement to Chief Coun-

A recently completed examination of the affairs of the Old Heritage Mutual Insurance Company by your department, as of December 31, 1975, indicates that the company has, as regards policyholders, a deficit of approximately $220,000.00. . . .

[I]t is the primary concern of the officers of the Company to protect the policyholders of the Company. Consequently, the officers are recommending to you that they be permitted to consummate a bulk reinsurance and assumption agreement with the Gibraltar Life Insurance Company for the benefit of the Old Heritage Mutual policyholders.

By letter of June 4, 1976, the Commissioner rejected the Neffs' proposal because of the continued deficit in Old Heritage's surplus, but stated that he would approve such a proposal if and when Old Heritage's financial condition was rendered "not insolvent, or not in a hazardous condition." By letter dated December 13, 1976, the Commissioner informed the Neffs that he would not consider any further proposal to activate Gibraltar until all of the Old Heritage's problems were satisfactorily resolved.

On July 15, 1977, the Neffs filed a petition for review seeking an order of this Court directing the Commissioner to lift Gibraltar's suspension. They later filed an application to amend the petition for review in which they wrote:

Since the time of filing Petition for Review in the above captioned matter, Old Heritage Mutual Insurance Company was suspended by the Insurance Commissioner, as a result of

sel for the Insurance Department, Mr. Guy DePasquale. The Hearing Examiner took official notice of the fact that Mr. DePasquale was not employed by the Insurance Department until June 18, 1976.

which management of Gibraltar Life Insurance Company no longer desires to enter into the proposed Reinsurance and Assumption Agreement with Old Heritage Insurance Company.

We remanded the matter to the Insurance Commissioner for an evidentiary hearing. The hearing was conducted on January 16 and 17, 1978 and an adjudication refusing to lift Gibraltar's suspension was issued on October 13, 1978. It is that order which the Neffs have appealed to this Court and which is before us for disposition.

The Neffs' entire case rests on the following language in their acquisition statement:

Pursuant to our meeting held in your office, Thursday, November 14th, the following is *a chronological narrative of the proposal* . . . regarding our acquisition of the Gibraltar Life Insurance Company.

All of the outstanding shares of the capital stock of Gibraltar are to be purchased by the Neffs upon receipt of written approval of same from the Insurance Department. We will then purchase sufficient additional shares of stock so as to place the Company in a solvent financial condition, for the protection of its existing policyholders. *At this time, the Insurance Department will withdraw its Cease and Desist Order against the Company.* (Emphasis added.)

They contend that the Insurance Commissioner when he approved the statement became legally bound by the quoted language to lift the suspension (the Cease and Desist order) at the moment they purchased the Gibraltar stock; and that they had no obligation with respect to the Old Heritage rehabilitation until the Commissioner lifted the suspension of Gibraltar. We disagree. First, the appellants ignore the fact that elsewhere in the acquisition letter, they agreed:

338

It is understood, by the Neffs, that the 'assumption time' described above, is intended to be a day, not later than, six months after the completion of the Gibraltar acquisition.

Furthermore, nowhere in the Commissioner's response to the statement does he agree that the reinsurance and assumption of Old Heritage was conditioned upon his lifting of the suspension of Gibraltar. Finally, Lawrence Neff, one of the principals, testified that he had submitted a sample reinsurance agreement to the Insurance Department prior to June 1, 1976. Since the Commissioner had not lifted the suspension of Gibraltar, an inference might be drawn that Lawrence Neff, at least, did not believe that Gibraltar was not obliged to undertake the reinsurance and assumption of Old Heritage's policies until after the Commissioner lifted the suspension.

As we have earlier noted, it is clear from a reading of the Neffs' acquisition statement and the Commissioner's response that a principal objective of the acquisition was the protection of the policyholders of the Neffs' other insurance business, Old Heritage, which was then in difficulty. The Commissioner was most certainly not interested in approving the bald acquisition of another insurance company by the Neffs, who controlled the ailing Old Heritage.

Order affirmed.

ORDER

AND Now, this 30th day of April, 1979, the order of William J. Sheppard, the then Insurance Commissioner of the Commonwealth of Pennsylvania, dated October 13, 1978, refusing the application of Herbert Neff and Lawrence Neff, on behalf of Gibraltar Life Insurance Company, to vacate the Commissioner's order of October 15, 1973, suspending Gibraltar's business, is affirmed.