William J. Sheppard, Insurance Commissioner of the Commonwealth of Pennsylvania, Petitioner v. Old Heritage Mutual Insurance Company, Respondent.

Heard April 11, 1980, by President Judge CRUMLISH.

*Joseph Kenneth Hegedus*, Deputy Attorney General, with him, *Norman J. Watkins*, Deputy Attorney General, Chief, Civil Litigation and *Gerald Gornish*, Attorney General, for petitioner.

*Malcolm H. Waldron, Jr.*, for respondent.

MEMORANDUM OPINION BY PRESIDENT JUDGE CRUMLISH, May 22, 1980:

This original jurisdiction action, brought by the Pennsylvania Department of Insurance in its capacity as liquidator of the Old Heritage Mutual Insurance Company (Old Heritage), seeks the surrender of certain books and records, property, stock certificates and assets of Old Heritage, Gibraltar Life Insurance Company (Gibraltar) and Pennsylvania Health Insurance Agency (Pennsylvania Health).

The present matter is an encore presentation by the parties stemming from our recent decision in *Sheppard v. Old Heritage Mutual Insurance Co.*, 45 Pa. Commonwealth Ct. 428, 405 A.2d 1325 (1979). The September 5, 1979 Order of this Court by the late President Judge Bowman[1] denied without prejudice the application for dissolution of the corporate entity, fixed the date of insolvency as of December 31, 1976, and granted the Department's application to liquidate the business of Old Heritage by taking possession of the assets in accordance with Section 520 of the Insurance Department Act of 1921.[2]

The Insurance Department brings this action in the form of a contempt request to secure possession of the following items belonging to Old Heritage not delivered by April 2, 1980: (1) Company Charter and Seal; (2) certain claim files, approximately 125 to 135 in number, either withheld or missing from Old

---

[1]The liquidation opinion and order is based upon the factual findings of specially-appointed Hearing Examiner, the Honorable Fred W. Davis, filed on October 11, 1978, and was affirmed on March 20, 1980, by our Supreme Court per Justice Nix. *See Sheppard v. Old Heritage Mutual Insurance Co.*, Pa. , 414 A.2d 1109 (No. 371 January Term, 1979, filed March 20, 1980).

[2]Act of May 17, 1921, P.L. 789, added by Section 2, Act of December 14, 1977, P.L. 280, 40 P.S. §221.20.

Heritage records, and (3) the capital stock of Gibraltar and Pennsylvania Health allegedly pledged to secure a $125,000 note from Pennsylvania Health.

### Corporate Charter and Seal

Taking the Insurance Department claims categorically, we will deny its request for possession of the Charter and Seal. The final order in *Sheppard v. Old Heritage Mutual Insurance Co., supra*, at 452, 405 A.2d at 1337-38, specifically denies the Department's application for dissolution of the corporate entity without prejudice for reapplication, and only permits liquidation of the business. Of course, Old Heritage's actual physical possession of these items does not prevent the Department from any required use or inspection.

### Claim Files

The Department is clearly entitled to those claim files which have been withheld or missing from Old Heritage records. By agreement of counsel and the parties, these claim files will be turned over to the Department, and all reasonable efforts will be made to do so under penalty of law.

### Capital Stock

A microscopic, non-myopic review of the history of this litigious galaxy is needed to properly evaluate this issue.

Old Heritage is an assessable domestic mutual casualty insurance company, organized and existing under the laws of this Commonwealth, and licensed by the Insurance Commissioner to engage in the business of health and accident insurance. On August 4, 1977, the Commissioner suspended its operations. Pennsylvania Health is one of several general agents selling insurance for Old Heritage, while Gibraltar is registered as a non-assessable stock life insurance com-

pany. The principal stockholders, directors, and officers of all three entities, at one time or another, were and are Herbert L. and Lawrence D. Neff, who were joined in this action.

On March 1, 1976, Old Heritage made a $90,000 collateral loan to Pennsylvania Health secured by commissions due or becoming due to Pennsylvania Health. Old Heritage was suspended by the Department on June 7, 1976, when its 1975 examination reported a deficit in policyholders' surplus. The suspension was terminated following a Rehabilitation Agreement on June 17, 1976, in accordance with these terms:

168. The terms of the 1976 rehabilitation agreement are summarized as follows:

a. Pa. Health will give a $125,000 collateral loan note to Old Heritage, said note to be secured by the stock of Pa. Health and of Gibraltar.

....

f. The capital stock of Pa. Health, and the capital stock of Gibraltar will be placed in the safety deposit box of Old Heritage under Department control as collateral for the obligation of Pa. Health.

169. The letters of June 16 and 17, 1976, [referring to rehabilitation agreement negotiations] respectively, provide the following terms for the claimed asset called 'collateral loans':

(a) obligor, or debtor, is Pa. Health, Inc.,

(b) obligee, or creditor or secured party, is Old Heritage,

(c) principal amount is $125,000,

(d) interest is 6% of unpaid balance,

(e) first payment of principal is due in September 1976,

(f) *collateral consists of all outstanding stock of Pa. Health and all outstanding stock of*

*Gibraltar,* excepting directors qualifying shares
..., and

(g) collateral consisting of stock is to be placed into Old Heritage's bank safe deposit box under control of the Insurance Department. (Emphasis added.)

On June 18, 1976, Pennsylvania Health satisfied the March 1st loan, and obtained a second collateral loan from Old Heritage in the amount of $125,000, evidenced by its June 30, 1976 second quarterly financial statement and December 31, 1976 annual financial statement. We note from the findings that there was no assignment of stock certificates by the owners, that Herbert Neff retained a key to the safe deposit box to insure "what he considered to have been the Department's obligation to lift the suspension of Gibraltar," that the stock was removed from the box when the suspension removal did not materialize, and that the owners deny a collateral loan note was even drafted, negotiated or given containing the terms outlined in Finding of Fact No. 169.

The Hearing Examiner also found that Pennsylvania Health records showed $20,000 of principal on the $125,000 collateral loan was paid between September and December of 1976, such that Old Heritage's December 31, 1976 annual statement claimed a $5,000 per month reduction to $105,000, the asset value of collateral loans.

Between March 24 and April 25, 1977, the Department conducted its regular inspection of Old Heritage to ascertain its financial condition and ability to fulfill obligations for the period ending December 31, 1976. In the interim, March 31, 1977, to be exact, Old Heritage made a third collateral loan to Pennsylvania Health in the amount of $125,000, offering as collateral a judgment note from Pennsylvania Health. This third transaction allegedly activated repayment of

the second loan, which had been reduced to $90,000 because of monthly payments between January and March of 1977.

The Department's August 3, 1977 report determined Old Heritage to be insolvent as of December 31, 1976, and an August 4th suspension order followed. The Department's liquidation application was commenced on August 16, 1977, and granted by us on September 5, 1977.

Before we can determine the question of who is entitled to the capital stock of Gibraltar and Pennsylvania Health, we must first identify the collateral for the June 18, 1976 loan, and second, clarify its corresponding relationship to the subsequent March 31st $125,000 loan to Pennsylvania Health.

In *Sheppard v. Old Heritage Mutual Insurance Co., supra,* at 438, 405 A.2d at 1331-32, this Court found that the collateral for the June 18th loan complied with the rehabilitation agreement terms. Upon review of *Sheppard,* in light of *Gibraltar Life Insurance Co. v. Bartle,* 50 Pa. Commonwealth Ct. 456, 413 A.2d 32 (1980), and *Neff v. Insurance Department,* 42 Pa. Commonwealth Ct. 333, 400 A.2d 920 (1979), we are unable to assign merit to respondent's allegation that the terms of Old Heritage's rehabilitation agreement also included removal of Gibraltar's business suspension. We can only conclude, as we review the prior record and the evidence adduced at the hearing, that the capital stock of Gibraltar and Pennsylvania Health, exclusive of director's qualifying shares, was indeed collateral for the $125,000 June 18th loan.

On the issue of collateral for the March 31st loan, the Department alleges that the stock of both Gibraltar and Pennsylvania Health was pledged to secure a note from Pennsylvania Health to Old Heritage, the note is in default and not legally

discharged, and, therefore, is forfeited to Old Heritage. The Company, on the other hand, argues that the March 31, 1977 collateral loan note actually discharged the June 18, 1976 obligation, and became the only outstanding collateralized obligation between Old Heritage and Pennsylvania Health as of the August 4, 1977 suspension date.

We disagree with the Company.

Section 520(d) of the Insurance Department Act, 40 P.S. §221.20(d), provides in pertinent part:

(d) Upon issuance of the [liquidation] order, the rights and liabilities of any such insurer and of its creditors, policyholders, shareholders, members and all other persons interested in its estate *shall become fixed as of the date of filing of the petition for liquidation....* (Explanation and emphasis added.)

Thus, the assets and liabilities of Old Heritage were frozen as of the liquidation petition's filing on August 16, 1977, four and one-half months after the third collateral loan.

The Department then argues that Section 528(a) of the Act, 40 P.S. §221.28(a), invalidates the March 31st collateral loan by its express terms:

(a) *Every transfer made* or suffered and every obligation incurred *by an insurer within one year prior to the filing of a successful petition for ... liquidation* under this article *is fraudulent* at to then existing and future creditors *if made* or incurred *without fair consideration,* or with actual intent to hinder, delay, or defraud either existing or future creditors. (Emphasis added.)

and cites the Hearing Examiner's findings on the March 31st transaction to support this proposition:

55. Based on the expert opinion of an independent analyst, this transaction constitutes a

straight swapping of paper, $90,000 note for $125,000, and there is no reconciliation in the financial statement indicating that Old Heritage received any cash, notes, bonds or other valuable consideration therefor.

Now comes the substantive question. Was the March 31st loan supported by "fair consideration" under Section 528(a) of the Act?

Our decision in *Sheppard v. Old Heritage Mutual Insurance Co., supra,* bedrocks this analysis in holding that the capital stock of Gibraltar and Pennsylvania Health served as collateral for the June 18th loan as of December 31, 1976. As to this collateral, Pennsylvania Health stock had no value on December 31, 1976, while the value of the collateral loan as an admitted asset of Old Heritage was $95,569, not $105,000 as claimed by the Company. According to the Hearing Examiner's findings, Pennsylvania Health was controlled by and income dependent upon Old Heritage, which had not generated positive net income from 1971 through 1976. Consequently, Pennsylvania Health valued its total stockholders' equity on a going concern basis of accounting at $5,187, while the Department's estimate on a liquidating basis of accounting was a deficit of $45,963.

Although the construction and application of Section 528(a) would appear to be a question of first impression, there is a pertinent resemblance in substance to Section 4 of the Uniform Fraudulent Conveyances Act:[3]

> Every conveyance made ... by a person who is ... insolvent, is fraudulent as to creditors, without regard to actual intent, if the conveyance is made ... without a fair consideration.

Section 1, 39 P.S. §351, includes "every payment of money" as a conveyance, and Section 3(a), 39 P.S.

---

[3]Act of May 21, 1921, P.L. 1045, *as amended,* 39 P.S. §354.

§353(a), defines "fair consideration" as that which is given for property in a good faith exchange as a fair equivalent for property conveyed. *See First National Bank of Marietta v. Hoffines,* 429 Pa. 109, 239 A.2d 458 (1968).

In this context, we are bound to conclude that the March 31, 1977, collateral loan from Old Heritage to Pennsylvania Health was not supported by "fair consideration." The facts are clear: As of December 31, 1976, Old Heritage was insolvent; the June 18, 1976 collateral loan, secured by Gibraltar and Pennsylvania Health stock, was valued at $95,569 as an admitted asset; and the capital stock of Pennsylvania Health was valued at zero, while stockholders' equity was negligible at best. The value of this loan was obviously found in the capital stock of Gibraltar, not in Pennsylvania Health. Under these circumstances, Old Heritage made the March 31, 1976 loan to Pennsylvania Health for $125,000, secured by a judgment note from that agency, completely free of Gibraltar.

We are further persuaded of this result by the interlocking nature of these entities. Old Heritage is a mutual insurance company, owned by its policyholders, who function as both insurers and insureds, there being no stockholders, while Gibraltar's a stock company, distinguished by straight ownership by its stockholders. The Hearing Examiner found that Herbert L. Neff and Lawrence D. Neff were directors and officers, President and Vice President/General Counsel respectively, of Old Heritage at the time of these transactions, as well as sole shareholders of Gibraltar and the majority shareholders of Pennsylvania Health. Under the circumstances, these relationships are not conducive to a healthy protection of Old Heritage owners and creditors.

Accordingly, we conclude that the March 31, 1976 transaction must be voided, and the June 18, 1976 transfer is preserved for the benefit of the Old Heritage estate.

On the question of whether the stocks are subject to set-off for wage obligations to corporate officers, this Court is not in the business of making advisory decisions. One need only refer to this Commonwealth's insurance laws to determine the appropriate powers and responsibilities of the Court-appointed liquidator.

Accordingly, we

ORDER

AND Now, this 22nd day of May, 1980, petitioner's request that this Court issue a rule upon Herbert Neff and Lawrence Neff, former officers and directors of Old Heritage Life Insurance Company, Gibraltar Life Insurance Company, and Pennsylvania Health Insurance Agency, Inc., to show cause why they should not be attached for contempt for failing and refusing to surrender the stock, all books of account, records, property, contracts, rights of action, equipment, keys to safety deposit boxes and assets of Gibraltar Life Insurance Company and Pennsylvania Health Insurance Agency, Inc., owned or held by Old Heritage Life Insurance Company to the Insurance Department as liquidator of said Company is hereby granted without sanctions so that (1) the March 31, 1977 collateral loan of $125,000 from Old Heritage to Pennsylvania Health is deemed to be void; (2) the June 18, 1976 collateral loan of $125,000 from Old Heritage to Pennsylvania Health shall be preserved as of March 31, 1977 for the benefit of the Old Heritage estate; and (3) the liquidator shall succeed to and may enforce the rights of Old Heritage on this existing obligation. Petitioner's request for possession of the outstanding claim files either removed or missing from respondent's records is hereby granted; and petitioner's request for possession of respondent's Corporate Charter and Seal in denied. Costs will be paid by each party, whereas the cost for the stenographic notes of testimony will be borne by petitioner, who will have the right to reimbursement for one-half (½) of these costs from the estate for administration purposes upon completion of