**Kathleen K. SHAULIS, Petitioner,**

v.

**PENNSYLVANIA STATE ETHICS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 16, 1999.

Decided Oct. 20, 1999.

As Amended Oct. 21, 1999.

Kathleen K. Shaulis, Carlisle, for petitioner.

Robin M. Hittie, Harrisburg, for respondent.

Patricia Krise Burket, Harrisburg, for intervenor, Com. Bar Ass'n.

Before COLINS, President Judge, and DOYLE, J., McGINLEY, J., PELLEGRINI, J., KELLEY, J., FLAHERTY, J. and LEADBETTER, J.

KELLEY, Judge.

Kathleen K. Shaulis (Shaulis) petitions for review of an opinion of the State Ethics Commission (Commission) mailed March 24, 1999. Therein, the Commission holds, based on the recent decision by our Supreme Court in *P.J.S. v. Pennsylvania State Ethics Commission*, 555 Pa. 149, 723 A.2d 174 (1999), that "during its one year period of applicability, Section 1103(g) of the [Public Official and Employee Ethics Act (Act), 65 Pa.C.S. § 1103(g),] applies to restrict a former public official/public employee who is an attorney, even as to legal representation before the governmental body. Our ruling in this regard shall be applied prospectively only, that is, from the date of issuance of this Opinion."[1]

1. Section 1103(g) of the Act provides: **(g) Former official or employee.**—No

Also before this Court for disposition are two motions: the Commission's motion to quash Shaulis' appeal and Shaulis' motion to strike portions of the Commission's brief on the merits in opposition to the petition for review.

On January 22, 1999, Shaulis retired from her position as Senior Assistant Counsel, Attorney III, with the Office of Chief Counsel, Pennsylvania Department of Revenue. Prior to her retirement, Shaulis sent a letter to the Commission, which the Commission received on January 11, 1999. Therein, Shaulis requested advice from the Commission as to what extent the Act imposes restrictions, if any, upon an attorney following retirement from the Pennsylvania Department of Revenue in publishing articles and/or books on the subject of Pennsylvania State taxes. In the letter, Shaulis stated that she understood that the Act may not be applied to restrict an attorney's conduct insofar as it constitutes the practice of law.

On January 12, 1999, the Commission sent a letter to Shaulis informing her that the Commission had received her advisory request letter dated January 11, 1999. Therein, the Commission informed Shaulis that a preliminary review of her request indicated that advice would be issued pursuant to Sections 1107(10) and (11) of the Act, 65 Pa.C.S. § 1107(10); (11).[2] On January 28, 1999, the Commission sent Shaulis

another letter informing her that upon further review of her advisory request letter, it had been determined that an opinion of the Commission would be issued instead due to the potential impact of a recent ruling of the Supreme Court. The letter further informed Shaulis that the matter would go before the full Commission at the next available public meeting, which Shaulis did not have to attend, wherein the Commission would review the matter and issue an opinion.

By letter dated January 30, 1999, Shaulis responded to the Commission's letter of January 28, 1999. Therein, Shaulis set forth her opinion that the recent ruling by the Supreme Court in *P.J.S.* did not have any impact on her requested ruling as to whether, following her retirement from the Department of Revenue, the writing and publication of articles and/or books on the subject of Pennsylvania State taxes would come within the purview of the practice of law, or whether the one year prohibition found in Section 1103(g) of the Act would prohibit her from such writing. By letter dated February 4, 1999, Shaulis received notification that her request for an opinion had been scheduled for a public meeting on February 26, 1999.

By letter dated February 19, 1999, Shaulis received confirmation of a telephone conversation with the Commission's assistant counsel that Shaulis' advisory re-

---

former public official or public employee shall represent a person, with promised or actual compensation, on any matter before the governmental body with which he has been associated for one year after he leaves that body.

The term "represent" is defined in the Act as:

To act on behalf of any other person in any activity which includes, but is not limited to, the following: personal appearances, negotiations, lobbying and submitting bid or contract proposals which are signed by or contain the name of a former public official or public employee.

Section 1102 of the Act, 65 Pa.C.S. § 1102.

**2.** Pursuant to Sections 1107(10) and (11) of the Act, the Commission shall issue to any person upon such person's request either an

opinion or written advice with respect to such person's duties under the Act. The terms "advice" and "opinion" are defined in Section 1102 of the Act, 65 Pa.C.S. § 1102, as:

"Advice." Any directive of the chief counsel of the State Ethics Commission issued under Section 1107(11) (relating to powers and duties of commission) and based exclusively on prior commission opinions, this chapter, regulations promulgated pursuant to this chapter and court opinions which interpret this chapter.

"Opinion." A directive of the State Ethics Commission issued pursuant to Section 1107(10) (relating to powers and duties of commission) setting forth a public official's or public employee's duties under this chapter.

quest had been re-docketed for the issuance of advice of counsel and that the same was enclosed therein as *Shaulis*, Advice of Counsel No. 99–511. In Advice of Counsel No. 99–511, Shaulis was advised, in pertinent part, as follows:

In applying Section 1103(g) to the narrow question which you have posed, specifically whether Section 1103(g) would prohibit you from writing and publishing articles/books on the subject of Pennsylvania State taxes, you are advised that since factually, such activities would not involve representation before your former governmental body, the Department of Revenue, they would not be prohibited by Section 1103(g) of the [Act].

In light of your comment regarding the practice of law, it is noted that the Pennsylvania Supreme Court's decision in *P.J.S.* ... may have a broadening effect insofar as the application of the [Act] to attorneys is concerned. While not material in this particular advisory, the *P.J.S.* decision may be a factor in considering other activities.

By letter dated March 1, 1999, Shaulis requested that the Commission clarify Advice of Counsel No. 99–511, based on the Commission's reference to *P.J.S.*, as to what extent Section 1103(g) of the Act imposed restrictions upon an attorney who is entering private practice following retirement from the Department of Revenue. Specifically, Shaulis requested that the Commission answer the following questions:

1.  Whether as an attorney, may she represent a client before the Board of Finance and Revenue;

2.  Whether, as an attorney, may she represent a client before the Board of Appeals of the Department of Revenue;

3.  Whether, as an attorney, may she participate in negotiations on behalf of a client with respect to a case that is docketed at the Commonwealth Court and the Department of Revenue is rep-

resented by the Office of Attorney General;

4.  Whether she may participate in a task force comprised of, among others, representatives from the tax bar where the task force's purpose is to assist the General Assembly in drafting proposed tax legislation; and

5.  Whether she may, as any other attorney might – or as a private citizen on her own behalf – ask a representative of the Department of Revenue or the Chief Counsel for the Department's interpretation of a tax matter.

By letter dated March 2, 1999, the Commission informed Shaulis that it had received her advisory request letter dated March 1, 1999, that an opinion would be issued, and that the matter would go before the full Commission at the next available public meeting. By letter dated March 5, 1999, Shaulis protested, based on procedural irregularities, the conversion of her request for advice of counsel to a request for an opinion and again requested that the Commission issue a clarification with respect to Advice of Counsel No. 99–511. By letter dated March 15, 1999, Shaulis was informed that a public meeting on the matter was scheduled for March 18, 1999. By letter dated March 16, 1999, Shaulis informed the Commission that she could not attend the March 18, 1999 public meeting due to a scheduling conflict but that she still objected to the issuance of an opinion based on procedural irregularities. Shaulis also indicated that her letter incorporated by reference all of the legal arguments concerning the substantive law addressed in her previous communications to the Commission.

Following the public meeting on March 18, 1999, the Commission issued an opinion wherein the Commission initially determined that it was within the Commission's discretion as to whether it would issue advice of counsel or an opinion and as to requests for clarification specifically, the regulations do not require that advice of counsel rather than an opinion be issued.

With regard to the substantive matters, the Commission pointed out that in accordance with this Court's prior holding in *Pennsylvania Public Utility Commission Bar Association v. Thornburgh,* 62 Pa. Cmwlth. 88, 434 A.2d 1327 (1981), *affirmed,* 498 Pa. 589, 450 A.2d 613 (1982), the Commission has consistently held that the predecessors of Section 1103(g) of the Act,[3] could not be applied to restrict a former public official's/public employee's conduct insofar as it constituted the practice of law, because the Supreme Court had the exclusive authority to regulate an attorney's conduct in that regard. In *Thornburgh,* this Court held that Section 3(e) of the State Ethics Act was an impermissible intrusion by the legislature into an area reserved by the Constitution[4] to the Supreme Court and one where the Supreme Court has acted to regulate the conduct of attorneys. *Thornburgh,* 434 A.2d at 1331.

However, the Commission determined that the Supreme Court's recent ruling in *P.J.S.* is the one that the Commission is now bound to follow. In *P.J.S.,* the Commission investigated an attorney, who was acting as a city solicitor for the City of Erie, for conduct proscribed by the conflict of interest provision of the now repealed State Ethics Act.[5] The Supreme Court first held that P.J.S. was a public official or public employee because he held the position of solicitor for the city as an employee and therefore was subject to the jurisdiction of the Commission for purposes of investigating allegations of violations of the State Ethics Act. Next, the Supreme Court addressed P.J.S.'s assertion that only the Supreme Court possesses the authority to regulate the ethical and professional conduct of attorneys admitted to practice in the Commonwealth of Pennsylvania; consequently, the Commission's investigation was barred. P.J.S. reasoned that because the Commission's investigation applied to actions he undertook through his private law practice, which actions are encompassed by the Rules of Professional Conduct regarding conflicts of interest, any investigation of his alleged misconduct lies solely within the exclusive jurisdiction of the Supreme Court.[6]

3. The predecessors of Section 1103(g) of the Act to which the Commission referred are Section 3(e) and Section 3(g) of what is commonly referred to as the State Ethics Act, Act of October 4, 1978, P.L. 883, *as amended,* 65 P.S. § 403, repealed by the Act of October 15, 1998, P.L. 729. Section 3(g) was added and the subject matter of Section 3(e) was moved to Section 3(g) when the State Ethics Act was reenacted and amended by the Act of June 26, 1989, P.L. 26. Repealed Section 3(g) of the State Ethics Act provided:

> No former official or public employee shall represent a person, with or without compensation, on any matter before the governmental body with which he has been associated for one year after he leaves that body.

4. Article V, Section 10(c) of the Pennsylvania Constitution provides:

> (c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide

for assignment and reassignment of classes of actions or classes appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

5. Specifically, P.J.S. was charged with violating Section 3(a) of the State Ethics Act, 65 P.S. § 403(a), repealed by the Act of October 15, 1998, P.L. 729, which provided:

> No public official or public employee shall engage in conduct that constitutes a conflict of interest.

6. The Commission's investigation of P.J.S. centered on a conflict of interest arising from P.J.S.'s representation of the city in litigation

The Supreme Court concluded that P.J.S.'s argument was mistaken because P.J.S. was attempting to use his status as a member of the Bar of Pennsylvania as a shield protecting him from investigation by the Commission. *P.J.S.*, 555 Pa. at 151, 723 A.2d at 178. The Supreme Court stated that "[a]lthough members of the Bar of Pennsylvania are uniformly subject to the professional and ethical standards imposed and regulated by this court, they are not, by virtue of that membership exempt from all other professional and ethical regulations." *Id.* at 151, 723 A.2d at 178. The Supreme Court pointed out that the court addressed this issue in *Maunus v. State Ethics Commission*, 518 Pa. 592, 544 A.2d 1324 (1988), and stated as follows:

> The precise question in *Maunus* was whether attorneys employed by the Pennsylvania Liquor Control Board were exempt from the financial disclosure provision of the Ethics Act by virtue of the fact that they were attorneys. This question was answered in the negative. The proposition that mere status as an attorney shields one from additional regulations aimed at proscribing conduct was rejected. Nor did the court find that its exclusive jurisdiction over the professional and ethical conduct of all attorneys was infringed by the imposition of workplace regulations on persons who also happened to be attorneys. As the court [in *Maunus*] so succinctly stated:
>
>> However, notwithstanding our substantial authority in this area, it is ludicrous to suggest that employers be constitutionally precluded from imposing ethical and professional requirements on their employees, some or all of who [sic] may be attorneys. This is equally true where the employer is the Commonwealth or one of its subdivisions ... a lawyer who contracts his or her services to an employer is like any other employee subject to the terms and rules of that employment, provided that they are in no way inimical to the ethical standards prescribed by this Court.
>
> *Maunus* at 1326.

*Id.* at 157, 723 A.2d at 178.

The Supreme Court stated further that its jurisdiction is exclusive in the sense that it applies equally to all members of the Bar of Pennsylvania. *Id.* at 158, 723 A.2d at 178. This exclusive jurisdiction, the Supreme Court opined, is infringed when another branch of government attempts to regulate the conduct of attorneys merely because of their status as attorneys. *Id.* at 158, 723 A.2d at 178. However, the Supreme Court stated, that its jurisdiction is not infringed when a regulation aimed at conduct is applied to all persons and some of those persons happen to be attorneys. *Id.* at 158, 723 A.2d at 178.

Herein, the Commission recognized that the employee in *P.J.S.* was not a former public official or public employee; nevertheless, the Commission determined that the Supreme Court sets forth in *P.J.S.* in clear and certain terms the parameters of permissible regulation of persons who happen to include attorneys. The Commission, without setting forth the Supreme Court's entire reasoning in *P.J.S.*, stated that the following language in *P.J.S.* as to Section 1103(a) [7] of the Act appears equally applicable to Section 1103(g):

> Contrary to [P.J.S.'s] assertion, the fact that the conduct proscribed by the conflict of interest provisions of the Ethics Act is similar to that proscribed by

---

through his private law practice, while simultaneously maintaining his position as solicitor for the city.

**7.** As noted previously herein, the appellant in *P.J.S.* was investigated by the Commission for violations of Section 3(a) of the now repealed State Ethics Act. The subject matter of repealed Section 3(a) is found in Section 1103(a) of the Act, 65 Pa.C.S. § 1103(a), which provides:

> **(a) Conflict of interest.**—No public official or public employee shall engage in conduct that constitutes a conflict of interest.

the Rules of Professional Conduct, does not mean that the Commission's investigation is barred. [P.J.S.] is not exempt from the jurisdiction of the Commission by virtue of his status as an attorney. Rather, [P.J.S.] is subject to the jurisdiction of this court because of his status as an attorney. The jurisdiction of this court is exclusive in the sense that it applies equally to all members of the Bar of Pennsylvania. The exclusive jurisdiction of this court is infringed when another branch of government attempts to regulate the conduct of attorneys merely because of their status as attorneys. However, the jurisdiction of this court is not infringed when a regulation aimed at conduct is applied to all persons and some of those persons happen to be attorneys.

The flaw in [P.J.S.'s] separation of powers argument is illustrated by this court's recent decision in *Commonwealth v. Stern*, 549 Pa. 505, 701 A.2d 568 (Pa.1997). In *Stern*, this court struck a penal statute that criminalized the conduct of attorneys. 18 Pa.C.S. § 4117(b)(1). In finding that the penal statute infringed on this court's exclusive jurisdiction to regulate the professional and ethical conduct of attorneys, it was the fact that the statute made the conduct at issue criminal if performed by an attorney which was significant. Where a regulation deals with attorneys as a class then it infringes upon the jurisdiction of this court.

To hold, as [P.J.S.] suggests, that the mere status of "attorney" exempts one from meeting the necessary professional regulations which flow from whatever position one holds in addition to that of "attorney" is absurd. Clearly [P.J.S.'s] status as an attorney does not bar the Commission from investigating allegations that [P.J.S.] engaged in conduct proscribed by the Ethics Act. The investigation of [P.J.S.] by the Commission does not infringe upon this court's exclusive jurisdiction to regulate the ethical and professional conduct of attorneys admitted to the practice of law in this Commonwealth.

Opinion of the Commission at 6–7 (quoting *P.J.S.*, 555 Pa. at 158, 723 A.2d at 178).

Based on this language contained in *P.J.S.*, the Commission stated that the Supreme Court in *P.J.S.* drew a very clear, logical, and sensible distinction between the regulation of attorneys specifically, which intrudes upon the Supreme Court's jurisdiction, as opposed to the regulation of groups that happen to include attorneys, which does not intrude upon the Supreme Court's jurisdiction. The Commission noted in considering Section 1103(g) of the Act, that Section 1103(g) is not targeted at attorneys specifically, nor does it regulate them exclusively. To the contrary, the Commission opined, Section 1103(g) imposes restrictions on *all* former public officials/public employees, some of whom are attorneys but many of whom are not attorneys. Moreover, the Commission opined, the prohibition against representation found in Section 1103(g) before the former governmental body during the first year is not targeted exclusively at legal representation. The Commission pointed out that the term "represent" is defined to include *any* form of representation.[8]

Thus, the Commission concluded that Section 1103(g) of the Act meets the *P.J.S.* criteria for permissible regulation of attorneys who happen to be within regulated groups that are not limited to attorneys. The Commission concluded further that Section 1103(g) fits precisely within the parameters clearly set forth in *P.J.S.* for permissible regulation of persons that happen to include, but are not limited to attorneys. This clear and certain directive, the Commission concluded, sets a new precedent for the Commission to follow. The

---

**8.** *See* Footnote 1 for the definition of the term "represent" as contained in Section 1102 of the Act, 65 Pa.C.S. § 1102.

Commission concluded further that the Section 1103(g) restrictions flow from the governmental position previously held for all former public officials/public employees, lawyers and non-lawyers alike, thereby rejecting Shaulis' argument that regulation is only permissible while the attorney is employed in government service.

Accordingly, the Commission held that, based upon the new precedent set by *P.J.S.*, Section 1103(g) of the Act applies to restrict a former public official/public employee who is an attorney, even as to legal representation before the governmental body, during its one year period of applicability. The Commission further held that its ruling only applied prospectively.

Based on this new precedent, the Commission reviewed the restrictions contained in Section 1103(g) with respect to Shaulis' inquiry. The Commission concluded that Shaulis, a former Senior Assistant Counsel, Attorney III, with the Pennsylvania Department of Revenue is a former public official/public employee subject to the restrictions of Section 1103(g) of the Act. The Commission concluded further that the former governmental body is the Department of Revenue in its entirety including but not limited to the Board of Appeals. The Commission concluded that based upon its review of the Supreme Court's decision in *P.J.S.*, the restrictions set forth in Section 1103(g) of the Act apply to restrict a former public official/public employee even as to the practice of law before the former governmental body. As such, with respect to Shaulis, the Commission determined that:

1. Shaulis could represent clients before the Board of Finance and Revenue because the Board of Finance and Revenue is within the Treasury Department and not the Department of Revenue;

2. Shaulis could not represent clients before the Board of Appeals, even in her capacity as an attorney during the one year period of applicability of Section 1103(g) of the Act, because the Board of Appeals is part of the Department of Revenue;

3. Shaulis may not participate in negotiations on behalf of a client with respect to a case that is docketed with the Commonwealth Court where the Department of Revenue would be participating;

4. Shaulis could be involved with a task force that would assist the General Assembly in drafting proposed tax legislation because that conduct would not constitute representation before the Department of Revenue; and

5. Shaulis would be prohibited by Section 1103(g) of the Act, in her capacity as an attorney representing a client, from requesting an interpretation of a tax matter from a representative or the Chief Counsel of the Department of Revenue.

On April 15, 1999, Shaulis filed a petition for review with this Court seeking reversal of the Commission's March 24, 1999 opinion, which she alleges unconstitutionally regulates her practice of law. Simultaneously, Shaulis filed with this Court an application for stay pending appeal and a motion for expedited consideration. By order of April 16, 1999, this Court granted the motion for expedited consideration and, after oral argument, this Court granted the application for stay by order of April 27, 1999.

On April 23, 1999, the Commonwealth Bar Association (Association)[9] filed an application for leave to intervene. By order of April 27, 1999, this Court granted the Association's unopposed application for leave to intervene.

On April 22, 1999, the Commission filed a motion to quash. On June 4, 1999, Shaulis filed a motion to strike portions of the Commission's brief in opposition to the petition for review. Before addressing the merits of the petition for review, we will

9. The Association is a union representing non-supervisory assistant counsels who are currently employed by the Pennsylvania Public Utility Commission.

address the Commission's motion to quash and Shaulis' motion to strike.[10]

## I. MOTION TO QUASH

The Commission alleges in its motion to quash that its March 24, 1999 is an advisory opinion only issued pursuant to Section 1107(10) of the Act, 65 Pa.C.S. § 1107(10), and that said opinion addresses questions submitted by Shaulis as to her proposed *future* conduct. Relying on this Court's decision in *Suehr v. State Ethics Commission*, 651 A.2d 648 (Pa.Cmwlth.1994), *petition for allowance of appeal denied*, 541 Pa. 647, 663 A.2d 697 (1995), the Commission contends that its advisory opinions are not subject to appeal and that an actual case or controversy must exist between the parties or else this Court cannot consider the appeal. Accordingly, the Commission requests that this Court quash Shaulis' petition for review or in the alternative, convert the improvident appeal into a more appropriate form of action within this Court's original jurisdiction pursuant to Pa. R.A.P. 1504.

In response, Shaulis contends that she has a right, as a matter of law, to appeal from an adverse opinion issued by the Commission and that *Suehr* should be overruled or distinguished on the basis of prior case law. Shaulis also contends that there is an actual case or controversy and that the Commission's March 24, 1999 opinion is an adjudication as defined by Section 101 of the Administrative Agency Law, 2 Pa.C.S. § 101. The Association argues that the instant case is factually distinguishable from *Suehr* and also takes the position that the Commission's March 24, 1999 opinion is an adjudication as defined by Section 101 of the Administrative Agency Law.

▮ We conclude that the Commission's March 24, 1999 opinion is an adjudication as defined by Section 101 of the Administrative Agency Law and that this Court's decision in *Suehr* is distinguishable

from the present matter. It is well settled that if an agency action is not an "adjudication", then it is not subject to judicial review by way of appeal. *Philadelphia County Medical Society v. Kaiser*, 699 A.2d 800 (Pa.Cmwlth.1997). Section 101 of the Administrative Agency Law defines an adjudication as

> Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made. The term does not include any order based upon a proceeding before a court or which involves the seizure or forfeiture of property, paroles, pardons or releases from mental institutions.

Thus, administrative actions are "adjudications" when they result in final determinations which affect personal or property rights. *Cook v. Pennsylvania Department of Agriculture*, 166 Pa.Cmwlth. 204, 646 A.2d 598 (1994). When an agency's decision leaves a complainant with no other forum in which to assert her rights, privileges or immunities, the agency's act is an "adjudication." *Turner v. Pennsylvania Public Utility Commission*, 683 A.2d 942 (Pa.Cmwlth.1996).

Herein, pursuant to the Commission's opinion, Shaulis, as a former public official/public employee, and all attorneys similarly situated, may not legally represent a client before the governmental body that previously employed them. Accordingly, the Commission's opinion clearly affects Shaulis' right to practice her trained profession by restricting the scope of that practice for a period of one full year. Moreover, the Commission's opinion has left Shaulis with no forum in which to assert her rights as she has no choice but to follow the Commission's opinion. To intentionally violate the Commission's opinion and represent clients in a legal

---

**10.** The Commission filed an application for extraordinary relief with the Supreme Court on May 14, 1999. The application was denied July 30, 1999.

capacity before the Department of Revenue would surely invite an ethical investigation by the Commission into Shaulis' activities. This option obviously jeopardizes Shaulis' ethical rating, her admission to practice law in the Commonwealth, and her reputation in the legal community.

Because the Commission's March 24, 1999 opinion affects Shaulis' right to practice her profession, the instant matter is clearly distinguishable from this Court's decision in *Suehr*. In *Suehr*, the complainant, a member of the board of directors of a municipal authority, sought an opinion from the Commission as to whether he would be in violation of the State Ethics Act if he were to receive reimbursement by the authority for his lost wages from his private employment for time spent doing authority business. The complainant at no time sought reimbursement from the authority for lost wages due to his attending to authority business nor was he disciplined for violating the State Ethics Act. Thus, the Commission's opinion, which held that the complainant would be violation of the State Ethics Act if he were to receive reimbursement, did not affect the complainant's personal or property rights. Accordingly, there was no case or controversy between the parties thereby precluding review of the appeal by this Court.

In the present case, however, there clearly is a case or controversy between the parties. As we have concluded previously herein, the Commission's opinion affects Shaulis' rights by preventing her from practicing her chosen profession, for which she has been admitted to practice and issued a license by the Supreme Court, before her former governmental body and before this Court in matters in which her former governmental body is involved for a period of one full year.

Accordingly, we deny the Commission's motion to quash.[11]

11. Because we have determined that the Commission's March 24, 1999 opinion is an adjudication and therefore appealable to this

## II. MOTION TO STRIKE

■ In the motion to strike, Shaulis is requesting that this Court strike all references in the Commission's brief in opposition to the petition for review to the Lobbying Disclosure Act, 65 Pa.C.S. §§ 1301–1311, and to the matter of *Gmerek v. State Ethics Commission*, 323 M.D. 99, currently pending before this Court. Shaulis contends that the Commission is unjustifiably and unfairly attempting to tie the recently filed constitutional challenge to the Lobbying Disclosure Act, *Gmerek*, to her case. Shaulis argues that this case and *Gmerek* do not involve the same question of law or the same fact situation and are not related challenges as argued by the Commission in its brief. Moreover, Shaulis contends, there has been no motion to consolidate and that she would vigorously oppose any such motion were one filed.

In response, the Commission contends that in both *Gmerek* and this case, the parameters of the permissible regulation of attorneys is the key issue and the Supreme Court's ruling in *P.J.S.* is the key authority on that issue. The Commission contends further that Shaulis' motion to strike is an absurd attempt to control the content of the Commission's brief and to interfere with the Commission's right to reference another, substantively related case which is a matter of public record and which is, in fact, filed with this Court.

The Commission's references in its brief to the constitutional challenge to the Lobbying Disclosure Act clearly indicate that the Commission believes that these two matters are directly related and that the disposition of this matter will impact in the *Gmerek* matter. However, as correctly pointed out by Shaulis, the matter presently before this Court involves a rather narrow issue while *Gmerek* concerns the constitutionality of the Lobbying Disclosure Act. Accordingly, upon review of the relevant portions of the Commission's brief,

Court, we need not address Shaulis' remaining arguments as to why the Commission's motion should be denied.

we grant Shaulis' motion to strike as set forth more precisely in the order accompanying this opinion.

## III. MERITS

■ Initially, we note that this Court must affirm the Commission's adjudication unless the adjudication violates the petitioner's constitutional rights, the adjudication is not in accordance with the law, appeal practice and procedures have been violated, or that any finding of fact made by the Commission is not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

In this appeal, Shaulis raises the following issues for review: (1) Whether *P.J.S.* overruled prior case law so that former public officials/employees who are attorneys are subject to the one year prohibition against practicing law before their former governmental bodies pursuant to Section 1103(g) of the Act; (2) Whether the Commission abused its discretion by: (a) overriding settled case law on the aforementioned issue, and (b) reaching an unreasonable conclusion; and (3) prejudging the issue as evidenced by the record, so that Shaulis' constitutional right to due process has been violated.

In support of these issues, Shaulis argues that the Commission ignores prior precedent, takes dicta from *P.J.S.* out of context, and embracing such dicta, justifies its brand new position on former public officials/public employees who leave government employment to practice law. Shaulis contends that the Supreme Court in *P.J.S.* did not expressly or by implication overrule prior precedent dealing specifically with the power of the Supreme Court to regulate the conduct of former public officials/public employees who are attorneys. Moreover, Shaulis argues, *P.J.S.* does not deal with Section 1103(g) of the Act but instead involves the investigation into the activities of a current government employee. Shaulis contends that, based on the facts of this case, the Com-

mission abused its discretion in overruling settled precedent, prejudging this issue and issuing an unreasonable decision.

The Association also argues that the Commission erred in relying on *P.J.S.* to reverse twenty years of legal precedent and that *P.J.S.* is factually distinguishable from the present matter. In addition, the Association argues that the Commission violated Shaulis' procedural due process rights as well as the rights of current government attorneys and former government attorneys.

In response, the Commission contends that the Supreme Court clearly set forth in *P.J.S.* the parameters of permissible regulation of persons who happen to include attorneys and that the restrictions found in Section 1103(g) of the Act fall squarely within those parameters. The Commission contends that these parameters must be applied to former public officials/public employees who happen to be attorneys even if the prohibited representation before their former governmental bodies would constitute the practice of law. The Commission argues that the restrictions found in Section 1103(g) are not targeted at attorneys as a class but rather apply to all former public officials/public employees. Section 1103(g), the Commission argues, is not targeted at legal representation specifically, but rather prohibits any form of representation for compensation before the former governmental body during the first year following public service. The Commission contends that the Supreme Court in *P.J.S.* set a new precedent that is also clearly in the public's interest and that its opinion is nothing more than a straightforward application of this precedent to Section 1103(g) of the Act. The Commission argues further that its procedures in this matter were fair and satisfied due process requirements to all concerned.

We begin by reviewing the legal precedent referred to by the parties. In *Wajert v. State Ethics Commission*, 491 Pa. 255, 420 A.2d 439 (1980), the Honorable John M. Wajert, Judge of the Court of Common

Pleas of Chester County, requested an opinion from the Commission with regard to the issue of whether a Judge of a Court of Common Pleas, upon retirement or resignation, may represent a client before that Court within the first year after such resignation. The Commission rendered an opinion that a Common Pleas Judge was barred by then Section 3(e) of the State Ethics Act, 65 P.S. § 403(e), from representing any person before the Court with whom he was associated for a period of one year following resignation or retirement. In response, Judge Wajert filed a petition for declaratory judgment in this Court seeking a declaration that the State Ethics Act was unconstitutional and of no force and effect in its application to judges and justices of the courts of the Commonwealth of Pennsylvania. This Court entered a final judgment ruling Section 3(e) of the State Ethics Act to be of no force and effect to judges of the Courts of Common Pleas in the Commonwealth of Pennsylvania. The Commission appealed to the Supreme Court.

Upon reviewing the relevant provisions of the State Ethics Act, the Supreme Court held that a court of law is a governmental body within the meaning of the State Ethics Act and that the term *former* "public official" included a judge who has retired or resigned. *Wajert,* 491 Pa. at 261, 420 A.2d at 442. Therefore, the Supreme Court concluded that Section 3(e) of the State Ethics Act applied to judges of the Courts of Common Pleas who have resigned or retired. *Id.*

Having determined that the statute was applicable, the Supreme Court went on to hold that the statute was unconstitutional insofar as it was applicable to a former judge. *Id.* The Supreme Court opined that the application of the statute to a former judge infringed upon the Supreme Court's inherent and exclusive power to govern the conduct of those privileged to practice law in this Commonwealth. *Id.* at

262, 420 A.2d at 442. The Supreme Court pointed out that long before the State Ethics Act was enacted, the Supreme Court adopted the Code of Professional Responsibility [12] enunciating the standards governing the professional conduct of those engaged in the practice of law in this Commonwealth. *Id.* The Supreme Court stated that in the rules enforcing that Code, the Supreme Court had made it abundantly clear that supervising the conduct of an attorney, including that of a former judge, before the courts of this Commonwealth was a matter exclusive to the Supreme Court. *Id.* The Supreme Court also noted that it was mindful that the reasons set forth in its decision for its ruling strongly suggest that the State Ethics Act was also unconstitutional on application to attorneys who seek to practice in Pennsylvania's courts. *Id.* at 261 n. 5, 420 A.2d at 442 n. 5. However, the Supreme Court refrained from ruling on this issue but felt compelled to point out that it gave conscious consideration of the possible breadth of its ruling. *Id.* Accordingly, the Supreme Court affirmed this Court's order.

In *Pennsylvania Public Utility Commission · Bar Association v. Thornburgh,* 62 Pa.Cmwlth. 88, 434 A.2d 1327 (1981), *affirmed,* 498 Pa. 589, 450 A.2d 613 (1982), this Court followed the Supreme Court's decision in *Wajert.* In *Thornburgh,* the Association filed a declaratory judgment action seeking to hold then Section 3(e) of the State Ethics Act unconstitutional as applied to the Association's members. Two former members of the Association, who had served as assistant counsels to the Pennsylvania Public Utility Commission, sought opinions from the Commission regarding the application of then Section 3(e) of the State Ethics Act to services they desired to perform for their clients. The Commission advised the former employees that only those professional services, which may involve the use of person-

**12.** The Rules of Professional Conduct, adopted by the Supreme Court on October 16, 1987, effective April 1, 1988, superseded the Code of Professional Responsibility.

al influence with former associates, were barred by the State Ethics Act and that other professional services such as the preparation of briefs and background services to clients would not be barred.

In granting the Association's motion for summary judgment, this Court opined that the Supreme Court's decision in *Wajert* removed any doubt that the language of the State Ethics Act did infringe upon the Supreme Court's exclusive power to govern the conduct of an attorney, including that of a former judge. *Thornburgh*, 434 A.2d at 1331. Based on the Supreme Court's reasoning in *Wajert*, including the text contained in footnote five of its opinion, this Court stated that the Supreme Court clearly foresees the possibility of a case such as the one before this Court and indicated what the result must be. *Id.* Accordingly, we concluded "that Section 3(e) of the [State] Ethics Act [was] an impermissible intrusion by the legislature into an area reserved by the Constitution to the Supreme Court and one where the Supreme Court has acted to regulate the conduct of attorneys." *Id.*

In *Kury v. State Ethics Commission*, 62 Pa.Cmwlth. 174, 435 A.2d 940 (1981), this Court followed our decision in *Thornburgh*. In *Kury*, a former state senator and member of the Bar of Pennsylvania sought review of an order of the Commission. Therein, the Commission held, based on then Section 3(e) of the State Ethics Act, that the former senator could not represent any client before the Pennsylvania Public Utility Commission for a period of one year after the expiration of his term as a member of the Pennsylvania State Senate. This Court reversed based on our recent decision in *Thornburgh* and held that since the former senator was a member of the Bar of Pennsylvania, his conduct in the rendering of professional legal services to clients with business before the Pennsylvania Public Utility Commission was regulated by the Supreme Court. *Kury*, 435 A.2d at 942. Therefore, the State Ethics Act did not control. *Id.*

Herein, the Commission acknowledged in its March 24, 1999 opinion that prior to its current ruling, the aforementioned precedent was controlling on the issue of whether Section 1103(g) of the Act applied to attorneys with respect to their conduct before the governmental bodies which previously employed them. However, based on the Supreme Court's ruling in *P.J.S.*, the Commission believes that a new precedent overruling the prior precedent was established. This clear and distinct precedent, as enunciated by the Commission, is that the restrictions found in Section 1103(g) of the Act now apply to *all* former public officials/public employees, thereby prohibiting the representation of clients before their former governmental bodies, even if the former public officials/public employees happen to be attorneys engaged in the practice of law. We disagree.

*P.J.S.* is clearly factually distinguishable from the present case. In *P.J.S.*, the issue before the Supreme Court was whether a current governmental employee, not a former public official/public employee, was subject to an investigation by the Commission into his ethical activities as a public employee. Notwithstanding the factual distinctions, the Commission's opinion that the Supreme Court's decision in *P.J.S.* has set forth new and clear precedent with respect to former public officials/public employees who are attorneys is erroneous.

Initially, we note that in *P.J.S.*, the Supreme Court did not rely upon its prior decision in *Wajert* or its progeny dealing with former public officials/public employees nor did the Supreme Court overrule the same. Instead, the Supreme Court principally relied upon its decision in *Maunus v. State Ethics Commission*, 518 Pa. 592, 544 A.2d 1324 (1988) which dealt with current government employees. In *Maunus*, attorneys employed by the Pennsylvania Liquor Control Board challenged the Commission's order directing them to comply with the financial reporting and disclosure requirements of the State Ethics Act.

The attorneys believed that the ethical conduct of attorneys was governed solely by the Supreme Court; therefore, the State Ethics Act was inapplicable to them. However, the Commission concluded that the attorneys were not exempt from the financial reporting and disclosure requirements of the State Ethics Act. On appeal to this Court, we reversed holding that the financial disclosure provisions were invalid as applied to publicly employed attorneys for the reason advanced by the attorneys. The Commission appealed to the Supreme Court, which reversed this Court's order and reinstated the Commission's opinions.

Before the Supreme Court, the attorneys relied upon the Pennsylvania Constitution, the Code of Professional Conduct, and the Rules of Disciplinary Enforcement for the position that the financial disclosure requirements, promulgated by the legislature outside the scope of the Supreme Court's regulatory authority, were unconstitutional as applied to attorneys employed by the Commonwealth or a subdivision thereof. In further support of their position, the attorneys relied upon the Supreme Court's decision in *Kremer v. State Ethics Commission*, 503 Pa. 358, 469 A.2d 593 (1983), wherein the court held that judges of the Courts of Common Pleas were exempt from the financial disclosure requirements. In rejecting the attorneys' arguments, the Supreme Court in *Maunus* pointed out a critical distinction between the attorneys' situation and *Kremer*. *Maunus*, 518 Pa. at 596, 544 A.2d at 1326. In *Kremer*, the individual was a judge of the Court of Common Pleas of Philadelphia County, and as such, was directly and exclusively an employee under the Supreme Court's jurisdiction. *Id.* Therefore, the judge's ethical and professional conduct was governed in its entirely by regulations adopted by the Supreme Court. *Id.* These included the Code of Judicial Conduct and Supreme Court Order No. 47, adopted after *Kremer*, which required all members of the Pennsylvania judiciary to file a statement of financial interest with the Administrative Office of Pennsylvania Courts on an annual basis. *Id.*

The Supreme Court opined that the appellees were attorneys and therefore they had professional and ethical obligations arising from directives of the Supreme Court as well as those deriving from the context of their employment. *Id.* The Supreme Court stated that although it has exclusive jurisdiction to discipline and regulate the professional class of attorneys, it was "ludicrous to suggest that employers are constitutionally precluded from imposing ethical and professional requirements on their employees, some or all of whom may be attorneys." *Id.* at 597, 544 A.2d at 1326. The Supreme Court stated further that this was equally true where the employer is the Commonwealth or one of its subdivisions. *Id.*

This language contained in *Maunus* was the exact language quoted by the Supreme Court in *P.J.S.* when it rejected a current governmental employee's argument that he was shielded or protected from an investigation by the Commission based on his status as a member of the Bar of Pennsylvania. *P.J.S.*, 555 Pa. at 158, 723 A.2d at 178. The Supreme Court in *P.J.S.* stated that "to hold, as appellant suggests, that the mere status of 'attorney' exempts one from meeting the necessary professional regulations which flow from whatever position one holds in addition to that of 'attorney' is absurd." *Id.* at 158, 723 A.2d at 178.

■ Thus, it is clear that the Supreme Court in *P.J.S.* was not setting forth a new precedent whereby a former public official/public employee may be prohibited by Section 1103(g) of the Act from representing a client before his or her former governmental body, even if that person is an attorney engaged in the practice of law. To the contrary, the Supreme Court in *P.J.S.* merely held that a current governmental employee is not shielded or protected from an investigation into his ethical conduct by the Commission because of his

status as an attorney. Therefore, legal precedent is still firmly in place that the Act does not control the conduct of an attorney, who is a former official/public employee, in the rendering of professional legal services to clients before his or her former governmental body. The Supreme Court has exclusive jurisdiction to regulate such conduct of the members of the Bar of Pennsylvania. As this Court noted in *Thornburgh,* this conduct is not limited to only those activities, which constitute the practice of law. *Thornburgh,* 434 A.2d at 1331 n. 7. "[W]here an attorney purports to render professional services to a client, whether or not those services relate to activities which in and of themselves may not constitute the practice of law, the attorney's conduct is regulated by the Supreme Court." *Id.*

We agree with the Commission that not all former public officials/public employees are attorneys. However, this fact does not automatically result in the restrictions found in Section 1103(g) of the Act becoming applicable to the legal representation by an attorney who is a former public official/public employee before his or her former governmental body. To hold otherwise would simply be taking the Supreme Court's decision in *P.J.S.* too far.

The point that the Commission misses is that its opinion affects attorneys as a class even though not all former public officials/public employees are attorneys. All the activities that the Commission ruled that Shaulis, as an attorney, could not perform involve the direct practice of law. The Commission cannot negate this fact by opining that Section 1103(g) meets the *P.J.S.* criteria for permissible regulation of attorneys because it regulates all former public officials/public employees and not attorneys specifically.

■ The Commission also erred by going so far as advising Shaulis that she is prohibited from representing a client in negotiations in a case docketed with this Court if the Department of Revenue is involved in the matter. By prohibiting attorneys who are former employees/former officials from practicing law before their former governmental body or in negotiations in cases docketed with this Court where the former governmental body is a party, the Commission is clearly infringing upon the jurisdiction of the Supreme Court. The conduct of a member of the Bar of Pennsylvania is without a doubt within the exclusive jurisdiction of the Supreme Court. *See* Article V, Section 10(c) of the Pennsylvania Constitution; The Rules of Professional Conduct; *P.J.S.; Wajert; Thornburgh; Kury.* Therefore, the only entity in the Commonwealth that may prohibit an attorney from practicing law in any arena is the Supreme Court. If the Commission considered the Supreme Court's entire reasoning in *P.J.S.* perhaps it would have reached a different conclusion from that rendered in its March 24, 1999 opinion.[13]

Accordingly, the Commission's adjudication is reversed insofar as it attempts to apply the provisions of Section 1103(g) of the Act to Shaulis' representation, as an attorney, of clients before the Department of Revenue and the Courts of this Com-

---

**13.** Moreover, upholding the Commission's opinion would result in recent law school graduates or attorneys considering employment in the public sector from thinking twice about accepting such employment in fear that such employment would prohibit them from practicing before the governmental body by which they were employed for one year after the termination of their employment

This is not a novel consideration. *See Wajert,* 491 Pa. at 261 n. 5, 420 A.2d at 442 n. 5 where the Supreme Court noted that consid-eration of the possible breadth of its ruling was essential, "since given its interpretation of the statute and its application to courts of law and its possible application to law clerks, ..., the courts of the Commonwealth might be effectively precluded from employing law school graduates as law clerks because persons would fear such employment would prohibit them form practicing before the court by which they were employed for one year after the termination of their employment."

monwealth.[14]

### ORDER

AND NOW, this 20th day of October, 1999, it is hereby ordered as follows:

1. The Motion to Quash Appeal filed by the Pennsylvania State Ethics Commission is denied.

2. The Motion to Strike Portions of Brief of Respondent State Ethics Commission on the Merits in Opposition to Petition for Review is granted and the following portions of the Pennsylvania State Ethics Commission's brief are stricken:

a. The reference in the Table of Citations to the Lobbying Disclosure Act, 65 Pa.C.S. §§ 1301–1311, appearing on page ii;

b. The first paragraph of the Summary of Argument on appearing page 9; and

c. The first paragraph and the first sentence of the second paragraph of the Argument and footnote 1 appearing on page 11.

3. The adjudication of the Pennsylvania State Ethics Commission, 99–003, mailed March 24, 1999, is reversed insofar as it attempts to apply the provisions of Section 1103(g) of the Public Official and Employee Ethics Act, 65 Pa.C.S. § 1103(g) to Petitioner's representation, as an attorney, of clients before the Department of Revenue and the Courts of this Commonwealth.

McGINLEY, Judge, concurring and dissenting.

I respectfully dissent to the majority's conclusion that "the Commission's March 24, 1999 opinion is an adjudication as defined by Section 101 of the Administrative Agency Law" and that "there clearly is a case or controversy between the parties."

Kathleen K. Shaulis (Shaulis) requested "advice from the State Ethics Commission as to what extent the Ethics Law imposes restrictions upon an attorney following retirement from the Pennsylvania Department of Revenue in publishing articles and/or books on the subject of Pennsylvania states [sic] taxes."[1] Letter of January 11, 1999, at 1; Reproduced Record (R.R.) at 3a. On February 19, 1999, the State Ethic Commission (Commission) responded to Shaulis' inquiry pursuant to Section 1107(10) and (11) of the State Ethics Act, Pa.C.S. § 1107(10) and (11). After a request for further clarification the Commission issued an advisory opinion on March 18, 1999.

An advisory opinion is nothing more than the view of the Commission on certain issues that affords a "requestor" certain defenses. Because an advisory opinion addresses questions concerning proposed *future* conduct there is no case or controversy and no right of appeal. "It is well established that a judicial determination that is unnecessary to decide an actual dispute constitutes an advisory opinion and has no legal effect." *Borough of Marcus Hook v. Pennsylvania Municipal Retirement Board*, 720 A.2d 803, 804 (Pa.Cmwlth.1998). "In general, the courts of this Commonwealth may not exercise jurisdiction to decide issues that do not determine the resolution of an actual case or controversy." *Id.* at 804.

Pa. R.A.P. 1504 provides:

If a petition for review is filed against any person, where the proper mode of relief is ... a petition for a declaratory judgment ... this alone shall not be a ground for dismissal, but the papers whereon the improvident matter was commenced shall be regarded and acted upon as a complaint or other proper process commenced against such person and as if filed at the time the improvident matter was commenced. The court

---

14. Based on our resolution of the first issue raised in this appeal, we need not address the parties' remaining arguments.

1. Shaulis' request was made pursuant to Section 7(10) of the State Ethics, 65.

may require that the papers be clarified by amendment.

I would grant the Commission's alternative request and treat Shaulis' petition for review as a petition for declaratory judgment filed in our original jurisdiction.

I do concur with the majority's conclusion that the Commission's advisory opinion goes beyond our Pennsylvania Supreme Court's decision in *P.J.S. v. Pennsylvania State Ethics Commission*, 555 Pa. 149, 723 A.2d 174 (1999), because "all former public officials/public employees are [not] attorneys ... this fact does not automatically result in the restrictions found in Section 1103(g) of the Act becoming applicable to the legal representation by an attorney who is a former public official/public employee before his or her former governmental body." I would grant the relief requested by Shaulis pursuant to the "Declaratory Judgment Act", 42 Pa.C.S. §§ 7531–7551.

Judge FLAHERTY joins in this concurring & dissenting opinion.

PELLEGRINI, Judge, concurring.

I join with the majority that attorneys are not subject to the Ethics Act's one-year prohibition from representing clients after they leave employment with that agency because such a prohibition interferes with our Supreme Court's sole jurisdiction to regulate the conduct of lawyers when acting as lawyers when there is no existing employment relationship with any governmental agency[1] but write separately to add that our Supreme Court has promulgated in Rule 1.11 of the Rules of Professional Conduct[2] detailed standards

1. At oral argument, counsel for the Ethics Commission stated that it desired us to reach the merits as long as Shaulis' Petition for Review was considered in the nature of a Declaratory Judgement action.

2. Rule 1.11 entitled "Successive Government and Private Employment" provides:
    (a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation. No lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:
    (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and
    (2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.
    (b) Except as law may otherwise expressly permit, a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person. A firm with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom.
    (c) Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not:
    (1) participate in a matter in which the lawyer participated personally and substantially while in private practice or non-governmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter; or
    (2) negotiate for private employment with any person who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially.
    (d) As used in this Rule, the term "matter" includes:
    (1) any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties; and
    (2) any other matter covered by the conflict of interest rules of the appropriate government agency.
    (e) As used in this Rule, the term "confidential government information" means information which has been obtained under governmental authority and which, at the time this Rule is applied, the government is

that an attorney must follow when appearing before their former agency that controls conduct attorneys may engage in even beyond the one-year prohibition contained in Section 1103(g)[3] of the Ethics Act. 65 Pa.C.S. § 1103(g).

LEADBETTER, Judge, dissenting.

I respectfully dissent from the decision to deny the Commission's motion to quash. An advisory opinion, even one which has the probable effect of altering future behavior, is not an adjudication within the meaning of the Administrative Agency Law, nor does it present this court with a justiciable appeal.

A fundamental and necessary aspect of any appealable decision is that it be *binding*. It is a further requirement of an administrative adjudication that it be *final*. The opinion issued by the Ethics Commission to Ms. Shaulis is neither. A vast difference exists between an opinion that proposed future conduct would violate the ethics laws and an order prohibiting such conduct. An order may not be violated with impunity, even if it is based upon an error of law. On the other hand, an advisory opinion based upon a flawed legal premise may be disregarded and the legal issue determined if and when any enforcement proceedings are initiated.[1]

Shaulis can obtain on appeal no more from this court than she did from the Commission, an *advisory opinion*. Although the Ethics Act empowers the Commission to issue such pronouncements, we have no similar authority. *Benson Lincoln Mercury, Inc. v. Department of Transp.*, 145 Pa.Cmwlth. 159, 602 A.2d 496, 498 (1992). *See also Suehr v. State Ethics Comm'n*, 651 A.2d 648 (Pa.Cmwlth. 1994), *alloc. denied*, 541 Pa. 647, 663 A.2d 697 (1995). I do not believe that *Suehr* is factually distinguishable from this case. In both situations, the applicant sought an opinion regarding future conduct which would be financially rewarding. The opinion stating that the proposed actions violated the ethics laws had the probable effect of deterring that conduct, and thus depriving the applicant of the monetary benefit. The only conceivable distinction apparent from this record would appear to be a notion that the conduct in question was of greater importance to Shaulis than to Suehr, a premise which is both speculative and irrelevant.

I further disagree with the majority that Shaulis is without any other forum in which to assert her rights. Indeed, better alternatives are available. She could seek an injunction or a declaratory judgment[2] in an original jurisdiction action, wherein she could obtain a binding adjudication of her rights rather than an advisory opinion. Moreover, because there is no factual record in an appeal from an opinion of this sort, we are not even in a position here to determine whether an actual case or controversy exists. In an original jurisdiction action, on the other hand, inquiry could be made into issues such as whether Shaulis has the present intention and ability to undertake the practice about which she has inquired or merely the hypothetical desire to do so. Representations by a litigant in an appellate brief do not provide a proper foundation for such assessments.

prohibited by law from disclosing to the public or has a legal privilege not to disclose, and which is not otherwise available to the public.

**3.** 42 Pa.C.S. 1103(g) of the Ethics Act provides:

No former public official or public employee shall represent a person, with promised or actual compensation, on any matter before the governmental body with which he has been associated for one year after he leaves that body.

**1.** Although a *favorable* opinion would protect Shaulis from such proceedings, an unfavorable one would not similarly prohibit her from challenging their validity. *See* 65 Pa.C.S. § 1107(10).

**2.** *See* Declaratory Judgements Act, 42 Pa.C.S. §§ 7531–7541. *See also Wajert v. State Ethics Comm'n*, 491 Pa. 255, 420 A.2d 439 (1990).

In disregarding these well established principles of justiciability, the majority focuses, I believe erroneously, upon the probable practical effect of the action under review. However, promulgation of a regulation by an administrative agency, which carries a stronger interrorum impact on future exercise of property rights than the opinion at issue here, has long been held not to be an appealable adjudication. *See Insurance Co. of N. Am. v. Insurance Dep't,* 15 Pa.Cmwlth. 462, 327 A.2d 411 (1974) [although in appropriate circumstances, an original jurisdiction action will lie, *see Arsenal Coal Co. v. Department of Envtl. Resources,* 505 Pa. 198, 477 A.2d 1333 (1984) ]. I can see no basis in logic or policy to justify these conceptually irreconcilable holdings.

For these reasons, I would quash this appeal and would not reach the other issues addressed by the majority.

