833 A.2d 123

**Kathleen K. SHAULIS, Appellee**

v.

**PENNSYLVANIA STATE ETHICS COMMISSION, Appellant,**

**The Commonwealth Bar Association, Intervenor.**

Supreme Court of Pennsylvania.

Submitted Oct. 10, 2000.

Decided Oct. 1, 2003.

Robin M. Hittie, for Pennsylvania State Ethics Com'n.

Kathleen K. Shaulis, for Kathleen K. Shaulis, Appellee.

Patricia Krise Burket, Harrisburg, for the Com. Bar Ass'n, Intervenor.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## OPINION

Justice NEWMAN.

The Pennsylvania State Ethics Commission (Commission) appeals from an Order of the Commonwealth Court, which determined that Section 1103(g) of the Public Official and Employee Ethics Act (Ethics Act)[1] was unconstitutional as applied to Kathleen K. Shaulis, Esquire (Shaulis) because it violated Article V, Section 10(c) of the Pennsylvania Constitution, which provides that this Court has the exclusive authority to regulate the conduct of an attorney insofar as it constitutes the practice of law.[2] For the reasons discussed herein, we affirm the Order of the Commonwealth Court.

1. Section 1103(g) of the Ethics Act provides as follows:

   No former public official or public employee shall represent a person, with promised or actual compensation, on any matter before the governmental body with which he has been associated for one year after he leaves that body.

   65 Pa.C.S. § 1103(g).

2. Pennsylvania Constitution Article V, Section 10(c) provides in full:

## FACTS AND PROCEDURAL HISTORY

On January 11, 1999, Shaulis was employed as a Senior Assistant Counsel (Attorney III) with the Office of the Chief Counsel to the Pennsylvania Department of Revenue. On that date, eleven days before her scheduled retirement, the Commission received a letter from Shaulis requesting that the Commission delineate the restrictions imposed by the Ethics Act when attorneys retire from the Department of Revenue. Specifically, Shaulis questioned whether Section 1103(g) of the Ethics Act barred her from publishing articles or books on Pennsylvania state taxes during the first year after her retirement. In the letter, Shaulis articulated her understanding that it is this Court, not the General Assembly, which can issue rules regulating the manner in which an attorney practices law. Shaulis stated that she believed that the Ethics Act could not be applied to restrict an attorney's conduct to the extent that it would constitute the practice of law. The next day, the Commission advised Shaulis that it had received her letter and would issue an Advice of Counsel in response to her query.[3]

> The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the Judicial Branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

3. The Ethics Act provides in Section 1107(10) and (11) that the Commission will issue either an Opinion or an Advice of Counsel when a person under the purview of the Ethics Act requests a ruling. Opinions issued by the Commission are public records and are published from time to time. Any person who acts in good faith reliance on an Opinion will be immune from criminal and civil penalties. Advices of Counsel, on the other hand, are not public records and only the requester can act in good faith reliance on an Advice of Counsel. *See* 65 Pa.C.S. § 1107.

On January 25, 1999, during the pendency of Shaulis' request for a determination by the Commission, this Court issued *P.J.S. v. State Ethics Commission,* 555 Pa. 149, 723 A.2d 174 (1999), which, the Commission believed, set forth the standard to be applied when determining the extent of its authority to regulate the activities of its former in-house attorneys. In *P.J.S.,* the City Solicitor for the City of Erie sought to circumvent a pending investigation into his activities by asserting his status as an attorney to prevent the Commission's inquiry. We declined to allow him to do so and explained that:

> The exclusive jurisdiction of this Court is infringed when another branch of government attempts to regulate the conduct of attorneys merely because of their status as attorneys. However, the jurisdiction of this Court is not infringed when a regulation aimed at conduct is applied to all persons, and some of those persons happen to be attorneys.

*Id.* at 178. On January 28, 1999, the Commission notified Shaulis that, instead of issuing an Advice of Counsel, it would issue an Opinion due to the potential impact of the decision of this Court in *P.J.S.* On January 30, 1999, Shaulis responded to the Commission's letter stating her belief that *P.J.S.* did not have any effect on her requested ruling.

In a letter dated February 4, 1999, the Commission advised Shaulis that it had scheduled a public meeting[4] for February 26, 1999, to consider her question. However, on February 19, 1999, the Commission cancelled the meeting and told her that she could author materials concerning Pennsylvania state taxes. The Commission expressed its opinion in Advice of Counsel No. 99–511 as follows:

4. When the Commission intends to issue an Opinion in response to a request for advice, it is common practice for the Commission to schedule a public meeting. Because an Opinion issued by the Commission has the potential to affect persons other than the one requesting advice, the Commission allows the case to be presented in a public forum. *See* 65 Pa.C.S. § 1107(14) (the Commission may "[h]old hearings, take testimony, issue subpoenas and compel the attendance of witnesses").

In applying Section 1103(g) to the narrow question which you have posed, specifically whether Section 1103(g) would prohibit you from writing and publishing articles/books on the subject of Pennsylvania State taxes, you are advised that since factually, such activities would not involve representation before your former governmental body, the Department of Revenue, they would not be prohibited by Section 1103(g) of the [Ethics Act].

In light of your comment regarding the practice of law, it is noted that the Pennsylvania Supreme Court's decision in *P.J.S.* ... may have a broadening effect insofar as the application of the [Ethics Act] to attorneys is concerned. While not material in this particular advisory, the *P.J.S.* decision may be a factor in considering other activities.

Advice of Counsel No. 99–511, page 3.

By letter dated March 1, 1999, Shaulis asked the Commission to clarify Advice of Counsel No. 99–511 to explain the restrictions that Section 1103(g) imposes upon an attorney who is entering private practice following retirement from the Department of Revenue.[5] Specifically, Shaulis posed five additional questions:

(1) could she, as an attorney, represent a client before the Board of Finance and Revenue;

(2) could she, as an attorney, represent a client before the Board of Appeals of the Department of Revenue;

(3) could she, as an attorney, participate in negotiations on behalf of a client with respect to a case docketed at the Commonwealth Court, in which the Department of Revenue is participating;

(4) could she participate in a task force to assist in the drafting of proposed tax legislation; and

**5.** In her letter, Shaulis stated that before she sought advice on whether she could publish articles and books on the subject of state taxes, she felt secure that she could represent clients before the Department of Revenue within one year of retiring. Shaulis explained that she requested clarification in response to the language in Advice of Counsel No. 99–511 discussing *P.J.S.*

(5) could she, as any other attorney might (or as a private citizen on her own behalf), ask a representative of the Department of Revenue or the Chief Counsel for the Department for an interpretation of a tax matter?

On March 2, 1999, the Commission informed Shaulis that it had received her request and would issue an Opinion.

On March 18, 1999, following a public meeting, the Commission issued Opinion No. 99–003. The Commission first noted that, based on *Pennsylvania Public Utility Commission Bar Association v. Thornburgh*, 62 Pa.Cmwlth. 88, 434 A.2d 1327 (1981), *affirmed per curiam*, 498 Pa. 589, 450 A.2d 613 (1982), the courts of this Commonwealth had consistently held that the predecessors to Section 1103(g) of the Ethics Act could not be read to restrict the conduct of a former public employee insofar as it constituted the practice of law. However, the Commission advised Shaulis that, notwithstanding *Thornburgh*, it interpreted *P.J.S.* as setting forth a new standard that permitted some regulation of the conduct of former government attorneys, provided that the regulation did not target attorneys exclusively, but rather included attorneys as part of a broader class.

The Commission determined that Section 1103(g) was neither limited to former government employees who were attorneys nor pertained solely to legal representation. Accordingly, and based on its understanding of *P.J.S.*, the Commission found that Section 1103(g) was a valid regulation that did not violate the exclusive jurisdiction of this Court to regulate the conduct of attorneys and the practice of law. Concerning the substantive questions contained in the communication, the Commission ruled that Shaulis could represent clients before the Board of Finance and Revenue (because that entity is not part of the Department of Revenue, Shaulis' former employer) and could assist in the drafting of tax legislation (because such activity does not constitute representation). However, the Commission concluded that Shaulis: (1) could not represent clients before the Board of Appeals of the Department of Revenue; (2) could not participate in negotiations where the Department of Revenue would be participating; and (3) could

not, in her capacity as an attorney representing a client, request an interpretation of a tax matter from the Department of Revenue. Opinion No. 99–003, pages 7–10.

Shaulis filed a Petition for Review with the Commonwealth Court, wherein she argued that the foregoing limitations on her conduct violated the exclusive jurisdiction of this Court to regulate the practice of law. The Commission responded with a Motion to Quash, contending that its Opinion was an advisory opinion, not subject to appeal, because it only addressed questions regarding the **proposed future** conduct of Shaulis. Shaulis filed a Motion to Strike portions of the brief of the Commission that referred to the Lobbying Disclosure Act, 65 Pa.C.S. §§ 1301, *et seq.*, or the matter of *Gmerek v. State Ethics Commission,*[6] 751 A.2d 1241 (Pa.Cmwlth.2000), *affirmed by an evenly divided Court,* 569 Pa. 579, 807 A.2d 812 (2002), then pending before the Commonwealth Court. In her Motion to Strike, Shaulis asserted that the Commission was unfairly attempting to tie her case to *Gmerek.*

In a published, *en banc* Opinion, the Commonwealth Court denied the Commission's Motion to Quash, determining that the decision limiting the professional activities of Shaulis constituted an appealable adjudication. *Shaulis v. State Ethics Commission,* 739 A.2d 1091 (Pa.Cmwlth.1999) *(en banc).* The court reasoned that if Shaulis "intentionally violate[d] the Commission's opinion and represent[ed] clients in a legal capacity before the Department of Revenue [she] would surely invite an ethical investigation by the Commission...." *Id.* at 1099–1100. The Commonwealth Court also granted Shaulis' Motion to Strike references in the brief of the Commission to the Lobbying Disclosure Act and *Gmerek,* reasoning that the

6. *Gmerek* involved a constitutional challenge to the Lobbying Disclosure Act. The Lobbying Disclosure Act imposed "certain registration and reporting requirements for lobbyists.... In addition, the Act also prohibit[ed] certain activit[ies] by a lobbyist and provide[d] for penalties for any violation of the Act." *Gmerek,* 807 A.2d at 815. Two lobbyists who were also attorneys challenged the Act, arguing that it impermissibly infringed on the exclusive jurisdiction of this Court to regulate the practice of law.

issue in *Gmerek* was not relevant to the narrow issue under review in the present case.

On the merits, the Commonwealth Court reversed the Opinion of the Commission, finding that Section 1103(g) of the Ethics Act, as applied to Shaulis, violated Article V, Section 10(c) of the Pennsylvania Constitution. The Commonwealth Court distinguished *P.J.S.* on the basis that *P.J.S.* involved an attorney who was employed as Erie City Solicitor at the time that he came under investigation by the Commission. The Commonwealth Court, thus, determined that *P.J.S.* did not set forth a new precedent that a **former** public employee who is an attorney could be prohibited from representing a client before his or her former governmental body. Instead, the Commonwealth Court held that *P.J.S.* merely stands for the proposition that a **current** government employee cannot be shielded or protected from his or her ethical obligations as a government employee simply by virtue of his or her status as an attorney.

Judge McGinley filed a concurring and dissenting Opinion, joined by Senior Judge Flaherty, in which he argued that the majority erred in finding that Shaulis had a right to appeal. Judge McGinley would have reached the merits by treating the Petition for Review filed by Shaulis as a request for declaratory judgment in the original jurisdiction of the Commonwealth Court. Substantively, Judge McGinley agreed that Section 1103(g) of the Ethics Act, as applied to Shaulis, was unconstitutional. Judge Pellegrini filed a concurring Opinion, in which he agreed with the majority's disposition of both the jurisdictional and substantive issues. He wrote separately to note that this Court had promulgated Rule 1.11 of the Pennsylvania Rules of Professional Conduct to specifically regulate the practice of law by former government attorneys.[7] Judge Leadbetter dissented, stating that the

7. Rule 1.11 (Successive Government and Private Employment) provides in relevant part as follows:

(a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after

Opinion of the Commission did not constitute an adjudication and, therefore, did not come within the appellate jurisdiction of the Commonwealth Court.[8]

## DISCUSSION

On appeal to this Court, the Commission made two arguments, the first procedural and the second substantive. As regards the procedural issue, the Commission submits that the Commonwealth Court should have declined to review the determination of the Commission because the Commission viewed its findings as advisory and not creating a basis for standing. Second, the Commission argues that the substantive conclusion of the Commonwealth Court finding that Section 1103(g) violates the Pennsylvania Constitution should be reversed. We begin our discussion with the procedural matter and then review the constitutional issue.

### I.  Standing

The Commission maintains that the Commonwealth Court exceeded the bounds of its appellate jurisdiction and acted contrary to longstanding judicial precedent by entertaining this matter as an appeal from an advisory opinion of the

consultation. No lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:

(1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.

(b) Except as law may otherwise expressly permit, a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person. A firm with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom.

8.  Judge Leadbetter did not express her views on the constitutionality of Section 1103(g) of the Ethics Act.

Commission. Relying on *Suehr v. State Ethics Commission*, 651 A.2d 648 (Pa.Cmwlth.1994), where the Commonwealth Court declined to consider the appeal of a determination of the Commission because the court viewed the Commission's order to reimburse lost wages as advisory, the Commission avers that the Commonwealth Court should have dismissed the appeal. The Commonwealth Court distinguished *Suehr* from the case *sub judice*, finding "a case or controversy between the parties" because the Opinion of the Commission "affects Shaulis' rights by preventing her from practicing her chosen profession...." *Shaulis*, 739 A.2d at 1100. The Commission contends that such a distinction is specious because, like Suehr, Shaulis merely sought the permission of the Commission to engage in conduct that would be financially rewarding to Shaulis. Shaulis counters that *Suehr* was wrongly decided and should be overruled by this Court, but we need not address that argument.

■ The argument of the Commission that Shaulis lacked standing is not meritorious. Section 1108(i) of the Ethics Act (Investigations by Commission—Appeal) specifically provides that "[a]ny person aggrieved by an opinion or order which becomes final in accordance with the provisions of [the Ethics Act] who has direct interest in such opinion or order shall have the right to appeal therefrom in accordance with law and general rules." 65 Pa.C.S. § 1108(i). Thus, to appeal, the following must exist: (1) a person is aggrieved by a decision of the Commission; (2) that decision is an opinion or order which becomes final; and (3) the person aggrieved has a direct interest in the opinion or order. The Ethics Act differentiates between an opinion and an order, defining the terms as follows:

"Opinion." A directive of the State Ethics Commission issued pursuant to section 1107(10) (relating to powers and duties of commission) setting forth a public official's or public employee's duties under this chapter.

"Order." A directive of the State Ethics Commission issued pursuant to section 1107(13) (relating to powers and duties

of commission) at the conclusion of an investigation which contains findings of fact, conclusions of law and penalties. 65 Pa.C.S. § 1102. The Ethics Act defines "final order"[9] but does not explain what is required for a final opinion. The dissent of Mr. Justice Saylor suggests that we refer to the definition of "final order" to understand what is required for an opinion to become final, but this position does not take account of the markedly different purposes of an opinion and an order. The Commission issues an opinion in response to a request for advice. 65 Pa.C.S. § 1107(10). The Commission issues an order when the subject is under investigation for a possible Ethics Act violation. 65 Pa.C.S. § 1107(13). A final order is the last step in the investigatory proceeding and is deemed final because there is nothing left for the Commission to do.

Likewise, we fail to see what additional steps the Commission could have taken to make the opinion issued in the present case more "final." Following notice to the public, a period for comment, and a public hearing, the Commission rendered a decision, which it published. The proceedings in front of the Commission had concluded, leaving Shaulis with the option either to accept the determination of the Commission or to attempt appeal. There was nothing left for the Commission to consider. Accordingly, the opinion was final for purposes of the Ethics Act.

Shaulis was aggrieved by the opinion of the Commission in that if she took the actions therein proscribed, she would expose herself to the exact ethical investigation that she was attempting to forestall by seeking the advice of the Commission in the first place. As the Commonwealth Court noted, to require Shaulis to potentially violate the Ethics Act in order to present her claims to the courts "jeopardizes her ethical rating, her admission to practice law in the Commonwealth,

9. Section 1108(f) provides in relevant part as follows:
   **Final order.**—Within 30 days of the receipt by the commission of the hearing record or, if no hearing is to be held, within 30 days of the receipt by the commission of the response to the findings report, the commission shall issue an order which shall be final.
   65 Pa.C.S. 1108(f).

and her reputation in the legal community." *Shaulis,* 739 A.2d at 1100. Likewise, as the decision of the Commission effectively estopped Shaulis from representing clients in proceedings before the Department of Revenue or adverse to the Department of Revenue, she had a direct interest in the opinion. Accordingly, we hold that the Commonwealth Court properly denied the Motion to Quash filed by the Commission and considered the merits of Shaulis' claim.

## II. Constitutionality

■ We now turn to the substantive matters. Specifically, we consider the merits of the Commission's contention that Section 1103(g) of the Ethics Act is constitutional. The Commission claims that the determination of the Commonwealth Court that Section 1103(g) is unconstitutional conflicts with our decision in *P.J.S.* It argues that *P.J.S.* permits regulation of groups that happen to include attorneys, provided that the group is not comprised of attorneys exclusively. The Commission posits that because Section 1103(g) regulates all employees similarly, it is not unconstitutional. Shaulis refers us to our decision in *Wajert v. State Ethics Commission,* 491 Pa. 255, 420 A.2d 439 (1980), and argues that the findings of the Commission unconstitutionally regulate the conduct of attorneys once they leave their government position. She submits that *Wajert* remains the law of the Commonwealth regarding the actions of **former** government employees and that *P.J.S.* does not apply because it only deals with the conduct of **current** government employees.

To consider the position of Shaulis, we briefly discuss our holdings in *Wajert* and *P.J.S. Wajert* involved the request of a judge of the Court of Common Pleas of Chester County for an Opinion from the Commission regarding whether he could represent a client before the court within the first year after his resignation. The Commission responded that the then applicable Ethics Act[10] would prohibit such activity, prompting

10. Section 3(e) of the Ethics Act, codified at 65 P.S. § 403(e) (repealed), provided that "[n]o former official or public employee shall represent a person, with or without compensation, on any matter before the gov-

Judge Wajert to file a declaratory judgment action in the Commonwealth Court to have Section 3(e) declared unconstitutional.[11] The Commonwealth Court refused to declare Section 3(e) unconstitutional, but did find the provision to be inapplicable to judges in the Commonwealth because it determined that courts of law are not governmental bodies. We rejected the approach taken by the Commonwealth Court, and held the statute unconstitutional as applied to former judges because the regulation "infringed on this Court's exclusive power to govern the conduct of an attorney. . . ." *Wajert*, 420 A.2d at 442 (citing Article V, Section 10 of the Pennsylvania Constitution).

In *P.J.S.*, the City Solicitor for the City of Erie sought declaratory relief to prevent the Commission from pursuing an investigation into whether he violated the conflict of interest provisions of the Ethics Act by representing the City as Solicitor while simultaneously representing public official defendants in their individual capacities. The City Solicitor attempted to circumvent the Ethics Act by contending that the Commission could not investigate his activities due to his status as an attorney. However, we rejected this argument, reasoning that "[a]lthough members of the Bar of Pennsylvania are uniformly subject to the professional and ethical standards imposed and regulated by this court, they are not, by virtue of that membership exempt from all other professional and ethical regulations." *P.J.S.*, 723 A.2d at 178. *Accord Maunus v. State Ethics Commission*, 518 Pa. 592, 544 A.2d 1324 (1988) (attorney members of the Liquor Control Board are not exempt from the financial reporting and disclosure requirements of the Ethics Act because workplace regulations can be imposed on employees who also happen to be

ernmental body with which he has been associated for one year after he leaves that body."

11. We note that Judge Wajert filed a declaratory judgment action in the Commonwealth Court rather than appealing the Opinion of the Commission. At the time, however, the then-applicable Ethics Act did not contain a provision similar to Section 1108(i) of the current Ethics Act, which provides for an appeal to the Commonwealth Court if the decision of the Commission constitutes an "adjudication."

attorneys). In *P.J.S.*, we concluded that "[t]he exclusive jurisdiction of this court is infringed when another branch of government attempts to regulate the conduct of attorneys merely because of their status as attorneys. However, the jurisdiction of this court is not infringed when a regulation aimed at conduct is applied to all persons, and some of those persons happen to be attorneys." *P.J.S.*, 723 A.2d at 178.

Contrary to the position taken by the Commission in the present case, nothing in our decision in *P.J.S.* indicates that we relied upon *P.J.S.* to overrule *Wajert*. We see no reason why *Wajert* would not have remained good law after *P.J.S.* In *P.J.S.*, the attorney in question was a public employee who sought to invoke the protection of this Court's exclusive jurisdiction over the conduct of attorneys. The City Solicitor in *P.J.S.* argued that attorneys should be exempt from generally applicable ethical rules for current government employees promulgated by the General Assembly. In contrast, the issue in *Wajert*, like the issue in the instant matter, related to the conduct of an attorney who was no longer a public employee. Shaulis and the judge in *Wajert* have simply asserted their right, absent a prohibition from this Court, to practice their profession. The connection between *Wajert* and *P.J.S.* reveals that this Court retains exclusive authority over the conduct of attorneys generally, but that an employer, in this case the Commonwealth government, can proscribe conduct of its current employees, including attorneys, provided that the proscription is not targeted specifically at attorneys.

Section 1103(g) of the Ethics Act conflicts with this principle in two significant respects. First, it purports to regulate the conduct of **former** employees. As the Commonwealth Court majority in the present case cogently notes, in *P.J.S.* we relied on *Maunus* and did not even mention *Wajert*. In *Maunus*, we explained that it is "ludicrous to suggest that employers are constitutionally precluded from imposing ethical and professional requirements on their employees, some or all of whom may be attorneys." *Maunus*, 544 A.2d at 1326. However, we refused to overrule *Wajert* in *Maunus*, indicating that the *Maunus—P.J.S.* line of cases presumes the existence

of *Wajert.* Accordingly, as concerns former government employees, *Wajert* remains the law of the Commonwealth, limiting the application of *P.J.S.* to the regulation of conduct of then-current government employees.

Second, the prohibitions contained in Section 1103(g) of the Ethics Act are unconstitutional because they specifically target attorneys. The provision seeks to prevent a former government employee from representing any person before his or her government employer for one year after the termination of their employment relationship. The Ethics Act defines "represent" as "[t]o act on behalf of any other person in any activity which includes, but is not limited to, the following: personal appearances, negotiations, lobbying and submitting bid or contract proposals which are signed by or contain the name of a former public official or public employee." 65 Pa.C.S. § 1102. While it is conceivable that a non-attorney could engage in such "representation" and, therefore, Section 1103(g) is not strictly limited in scope to attorneys, it nonetheless targets the practice of law. *Cf. Gmerek v. State Ethics Commission,* 569 Pa. 579, 807 A.2d 812, 825 (2002) (Saylor, J., Opinion in Support of Reversal) (the Lobbying Disclosure Act is not unconstitutional because it does not control appearances before judicial tribunals and does not estop persons from appearing before officers and agencies sitting in a quasi-judicial capacity).

Accordingly, we find Section 1103(g) of the Ethics Act unconstitutional, as violative of Article V, Section 10 of the Pennsylvania Constitution, to the extent that Section 1103(g) applies to former government employees who are also attorneys. We do not question the policy underpinning Section 1103(g). We recognize the sound rationale for prohibiting a former government employee from "represent[ing] a person, with promised or actual compensation, on any matter before the governmental body with which he has been associated for one year after he leaves that body." 65 Pa.C.S. § 1103(g). However, the state legislature is not the body vested with the power to enact such a restriction; that authority lies with this

Court through the promulgation of the Pennsylvania Rules of Professional Conduct.

## CONCLUSION

In accordance with the foregoing discussion, we affirm the Order of the Commonwealth Court. Section 1103(g) of the Ethics Act is unconstitutional to the extent that it regulates the conduct of former government employees who are also attorneys.

Chief Justice CAPPY and Justice CASTILLE join the majority opinion in full.

Justice LAMB files a concurring opinion, in which he joins Section II of the majority opinion.

Justice EAKIN files a concurring and dissenting opinion, in which he joins Section I of the majority opinion.

Justice SAYLOR files a dissenting opinion, joined by Justice NIGRO.

Justice LAMB concurring.

I join Section II of the majority opinion, denominated "Constitutionality", in the discussion of the principal substantive issue here raised and I agree that Section 1103(g) of the Ethics Act[1] (Act) is unconstitutional to the extent that it purports to regulate the conduct of attorneys who are former government employees. I write separately, however, to express disagreement with the discussion in the Section I of the majority opinion, denominated "Standing", and having to do with the issue of the appealability of the Commission's advices issued, as these advices were, pursuant to the authority invested in the Commission by 65 Pa.C.S. §§ 1107(10)–1107(11), to issue opinions and written advice on request of persons who inquire as to their duties under the Act. I would not permit an appeal from such opinions or written advices as they are not, in my view, an "adjudication" as that term is defined in the Administrative Agency Law. *See* 2 Pa.C.S. § 101. They are

1. Act of October 15, 1998, P.L. 729, No. 93, § 1, 65 Pa.C.S. § 1103(g).

not a final order, decree, decision, determination or ruling of the Commission, but are properly categorized, in the terms of the Act, as opinions and written advice.

Nevertheless, I would not on that ground avoid the important substantive issue before us. As Judge McGinley noted in concurring and dissenting from the decision below, Katherine Shaulis had available to her an action in declaratory judgment brought in the Commonwealth Court's original jurisdiction by which to obtain judicial review of the Commission's advice.[2] Equally, as Judge McGinley also emphasized, the Commonwealth Court was possessed of authority under Pennsylvania Rule of Appellate Procedure 1504[3] to "regard and act upon" the petition for review filed by Ms. Shaulis as if it were a complaint in declaratory judgment. Under these circumstances, while a remand to the Commonwealth Court for the purpose of exercising its authority under Pa.R.A.P. 1504 would be procedurally appropriate, such action would accomplish only additional delay before the eventual return of the identical issue to this Court for resolution. Therefore, in the interest of deciding this important issue with all possible dispatch, I would treat the matter as having been decided below under Pa.R.A.P. 1504, thereby reaching the issue of the validity of Section 1103(g) of the Act without the necessity of categorizing the Commission's opinions and written advices as appealable adjudications.

Justice EAKIN concurring and dissenting.

I agree that the opinion of the Ethics Commission is final, giving Ms. Shaulis standing to appeal, and join Section I of the

**2.** On this ground I cannot agree with the suggestion in the majority opinion that the only alternative actions available to Ms. Shaulis were to appeal or to "jeopardize ... [her] ethical rating, her admission to practice law in the Commonwealth, and her reputation in the legal community." Majority slip op. at 12 (quoting *Shaulis v. State Ethics Comm'n*, 739 A.2d 1091, 1100 (Pa.Cmwlth.1999)).

**3.** Pa.R.A.P. 1504 as well as 42 Pa.C.S. § 5103 provide that where a party commences an appeal by means of a petition for review, as was done in this case, and the proper mode of relief is by an action in declaratory judgment, then the case shall not be dismissed, but shall instead be regarded and acted upon as a complaint in declaratory judgment.

majority opinion. However, I conclude § 1103(g) of the Ethics Act is constitutional as applied to her and respectfully dissent from Section II.

Pennsylvania's Constitution has vested this Court with the responsibility of supervising the practice of law. Article V gives this Court "the power to prescribe general rules governing practice, procedure and the conduct of all courts...." Pa. Const. art. V, § 10(c). While this Court has guarded this power from the encroachment of the General Assembly on numerous occasions, it has also rejected calls for unrealistic micromanagement over provisions of general applicability. *See P.J.S. v. State Ethics Commission*, 555 Pa. 149, 723 A.2d 174 (1999); *Maunus v. State Ethics Commission*, 518 Pa. 592, 544 A.2d 1324 (1988).

This sentiment was echoed in *P.J.S.*, our most recent validation of the Ethics Act, in which this Court said, "[a]lthough members of the Bar of Pennsylvania are uniformly subject to the professional and ethical standards imposed and regulated by this [C]ourt, they are not, by virtue of that membership exempt from all other professional and ethical regulations." *P.J.S.*, at 178. Additionally, this Court has upheld principled workplace regulations on persons who also happened to be attorneys in *Maunus*, stating:

> However, notwithstanding our substantial authority in this area, it is ludicrous to suggest that employers be constitutionally precluded from imposing ethical and professional requirements on their employees, some or all of who may be attorneys. This is equally true where the employer is the Commonwealth or one of its subdivisions ... a lawyer who contracts his or her services to an employer is like any other employee subject to the terms and rules of that employment, provided that they are in no way inimical to the ethical standards prescribed by this Court.

*Maunus*, at 1326.

Ms. Shaulis accepted employment with the Commonwealth with full knowledge of the Ethics Act,[1] and knew it would

---

1. The version of the Ethics Act in place when Ms. Shaulis was hired, 65 P.S. § 403(e), was identical to 65 Pa.C.S. § 1103(g), except the phrase

prohibit her from representing others before the Department for a year after she left employment. Her ignorance of this law cannot be presumed; she must have weighed the benefits and obligations before accepting her position. Given the interest of preserving the integrity and neutrality of that tribunal, this is a very reasonable ethical protection, to which she subscribed when she took employment.

The majority finds § 1103(g) was directed wholly at lawyers, and therefore fails under *Wajert v. State Ethics Commission*, 491 Pa. 255, 420 A.2d 439 (1980); this is because the Act states "no former public official or public employee shall *represent* a person...." 65 Pa.C.S. § 1103(g)(emphasis added).

The Act prohibits *all* former employees from representation, regardless of their profession, and defines "represent" as "to act on behalf of any other person in any activity which includes, but is not limited to, the following: personal appearances, negotiations, lobbying and submitting bid or contract proposals...." 65 Pa.C.S. § 1102. One hardly needs to be a lawyer to perform these functions. This is representation before a "governmental body," not a court; one has only to walk into the seat of government to see flocks of non-lawyers representing others before the government. The Board of Revenue and Finance allows one to "appear on his own behalf or be represented by a person possessing the requisite technical education, training or experience. There is no requirement that a petitioner be represented before the Board by an attorney or certified public accountant." 61 Pa.Code § 7.5(b)(2). Many other professionals represent clients before the various governmental boards and are subject to the Act's restrictions. I cannot find this is an Act directed at lawyers.

In an Act that does not mention lawyers, the majority effectively inserts "except lawyers" into the law; hence, all others, from accountants to engineers to lobbyists, must abide by this ethical restriction, but lawyers need not. It is ironic that by finding the Act targets lawyers, the majority's result is

"with or without compensation" was replaced by "with promised or actual compensation."

a statutory prohibition that binds everyone *except* lawyers. Accordingly, I must dissent.

Justice SAYLOR dissenting.

I respectfully disagree with the conclusion of the majority that an advisory opinion issued pursuant to Section 1107(10) of the Ethics Act is a "final opinion" subject to appeal, as well as its determination that Section 1103(g) is unconstitutional as applied to former government employees who are attorneys.

With respect to appealability, in Section 1108 of the Ethics Act, entitled "Investigations by commission," the Legislature provided for appeals from opinions and orders "which become[ ] final in accordance with the provisions of this chapter." 65 Pa.C.S. § 1108(i). Section 1108 contains the Ethics Act's sole prescription for appealability; Section 1107, pertaining to advisory opinions such are at issue in the present case, has no corollary provision. Moreover, the statute's only designation of finality also appears in Section 1108 and expressly attaches to orders arising from Commission investigations, which commence upon the filing of a complaint or on Commission motion, may proceed through preliminary inquiry and investigation, and culminate in a findings report and, where requested, an evidentiary hearing. *See* 65 Pa.C.S. § 1108(f) (delineating as final an order required to be issued by the Commission within thirty days of receipt of the investigative hearing record or response to the findings report, where a hearing has not occurred). Conversely, no provision of the statute designates advisory opinions issued under Section 1107(10) as final and/or subject to appellate review in the judiciary.

In light of this framework, I would honor the definitional specifications for appealability and finality contained within the Ethics Act. *Accord Cheyenne–Arapaho Gaming Comm'n v. National Indian Gaming Comm'n,* 214 F.Supp.2d 1155, 1171 (N.D.Okla.2002) (holding that Congress' specification of the character of final agency actions in enabling legislation supported the implied corollary proposition "that the other agency actions are not final, and ergo, not reviewable." (citing *Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 208, 114 S.Ct.

771, 777, 127 L.Ed.2d 29 (1994))). Of course, a statute which too closely limits the right of appeal might be vulnerable to constitutional challenge.[1] Here, however, the advisory character of Section 1107(10) opinions and the associated ripeness question would seem to alleviate the salient, due process concern. *Cf. Kemler v. Poston,* 108 F.Supp.2d 529, 539–43 (E.D.Va.2000) (concluding that an advisory opinion by a state judicial ethics commission was not a final, appealable order, *inter alia,* on ripeness grounds); *Transit Mgmt. of Southeast La., Inc. v. Commission on Ethics for Pub. Employees,* 703 So.2d 576, 578 (La.1997) (explaining that "until there is some proceeding before the [state ethics c]ommission which could result in the [c]ommission's imposing a penalty, there is no preliminary or procedural action or ruling by the [c]ommission that is appropriate for judicial review, either by appeal or by supervisory writs[;] [i]ndeed, there is no justiciable controversy for the courts to decide"), *modified,* 710 So.2d 792 (La. 1998).

In the present matter, the Commission did not initiate any form of investigative, prosecutorial, or enforcement proceeding—Appellee merely requested and received the Commission's view concerning provisions of its enabling legislation. As the Commission notes, when this occurs under Section 1107(10) of the Ethics Act, the designed effect is merely to afford certain defenses to a requestor who truthfully submits the material facts and who in good faith, follows the advice given. *See* 65 Pa.C.S. § 1107(10); *Suehr v. State Ethics Comm'n,* 651 A.2d 648, 649 (Pa.Cmwlth.1994). I also note, in accordance with the dissenting opinions of Judges Leadbetter and McGinley, that a requestor in such circumstances is not entirely without a remedy. *See Shaulis v. Pennsylvania State Ethics Comm'n,* 739 A.2d 1091, 1108–09 & n. 2 (Pa.Cmwlth. 1999) (Leadbetter, J., dissenting) (citing the Declaratory Judgments Act, 42 Pa.C.S. §§ 7532–7541); *Shaulis,* 739 A.2d at

---

1. This would be the case, for example, upon any suggestion that the Legislature did not intend for a right of appeal to attach to the imposition of criminal penalties under Section 1109 of the Ethics Act, 65 Pa.C.S. § 1109, or the award of monetary damages under Section 1110, 65 Pa.C.S. § 1110.

1106–07 (McGinley, J., concurring and dissenting) (citing Pa. R.A.P. 1504). Indeed, I believe that the best course for the Commonwealth Court to take upon receipt of a petition for review in these circumstances, as Judge McGinley suggests, would be to apply Rule of Appellate Procedure 1504, and treat the matter in its original jurisdiction as a declaratory judgment proceeding. *See id.*

On the merits, I have previously expressed the view that the Court should defer to the General Assembly with respect to incidental regulation of legal practice such as may be conducted in the other branches of government. *See Gmerek v. State Ethics Comm'n*, 569 Pa. 579, 602–04, 807 A.2d 812, 826–27 (2002) (Saylor, J., opinion in support of reversal).[2] Moreover, here, I would give credence to the Legislature's explanation that its one-year, post-employment limitation is not intended to regulate the practice of law as such, but rather, to prevent pernicious practices and the appearance of impropriety, thereby strengthening public confidence in government by assuring its constituents of the impartiality and honesty of its public officials.[3] *Accord Forti v. New York State Ethics Comm'n*, 75 N.Y.2d 596, 555 N.Y.S.2d 235, 554 N.E.2d 876, 885 (1990) (explaining that New York's revolving door law "is not directed specifically at admitted attorneys but rather is aimed at all

**2.** I also disagree with the majority's assessment that Appellee's status as a former (as opposed to present) employee should control in determining the constitutionality of Section 1103(g), and that this establishes a material basis on which the Court's reasoning from the *P.J.S.* case may be distinguished. *See* Majority Opinion, at 132. When determining whether a regulation intrudes on the Court's core functions, I believe that the inquiry should not turn on employment status or identity of the entity prescribing the regulation, but rather, on the character and substance of the regulation, including the scope of its applicability. *See Gmerek*, 569 Pa. at 599 n. 6, 807 A.2d at 825 n. 6 (Saylor, J., opinion in support of reversal). I do find the Court's decision in *Wajert v. State Ethics Comm'n*, 491 Pa. 255, 420 A.2d 439 (1980), to be fairly distinguishable, as the circumstances involved regulation of legal practice before the judiciary, *see id.* at 262, 420 A.2d at 442, which is far closer to the core area of this Court's authority than regulation in the administrative arena.

**3.** *See* 65 Pa.C.S. § 1101.1(a); *see also* Act of October 4, 1978, P.L. 883, No. 170, § 1, 65 P.S. § 403(e) (reenacted and amended by the Act of June 26, 1989, P.L. 26, No. 9, § 1, 65 P.S. § 403(g)) (repealed by the Act of October 15, 1998, P.L. 729, No. 93, § 1, 65 Pa.C.S § 1103(g)).

former executive branch employees[;] [i]ts effect on the practice of law is, thus, merely incidental"). With regard to the argument that the Court has already addressed the mischief to be remedied by Section 1103(g), as applied to attorneys, by promulgating Rule 1.11 of Professional Responsibility, I would follow the view of other courts which would regard revolving door legislation as supplemental to such rules, and not as conflicting. *See, e.g., Howard v. State Comm'n on Ethics,* 421 So.2d 37, 39 (Fla.Dist.Ct.App.1982) ("The [revolving door] statutes enacted by the legislature merely supplement the Canons of Professional Responsibility adopted by the Supreme Court. When an attorney decides to accept public employment, he does so subject to the legislative proscription on his conduct."); *accord Pennsylvania PUC Bar Ass'n v. Thornburgh,* 498 Pa. 589, 593, 450 A.2d 613, 615 (1982) (Hutchinson, J., dissenting to *per curiam* order) ("There is no apparent contradiction between the Code of Professional Responsibility and the Ethics Act. The legislature has merely exercised its authority to enact a more stringent rule addressing the same subject as [the Court's rules], declaring that a particular private employment within a specified period presents the appearance of impropriety we generally condemn. A determination that such employment is offensive in appearance is not manifestly unreasonable.").

I acknowledge the burden that the one-year, post-employment restriction places on former government employees. *See generally Forti,* 555 N.Y.S.2d 235, 554 N.E.2d at 883–84 (discussing the important competing interests and concerns that must be balanced in implementing revolving door legislation). The deference that I would afford to the statutory constraint arises from my view of the respective roles and prerogatives of the legislative and judicial branches, not out of personal agreement with the particular balance that the General Assembly has struck. I simply view regulation of representative activity in the executive, administrative arena as within the legitimate sphere of legislative interest, and would invoke this Court's authority under Article V, Section 10(c) of the Pennsylvania Constitution to disapprove only those legisla-

tive acts that infringe on the essential functioning of the judiciary. *Accord Gmerek,* 569 Pa. at 602–04, 807 A.2d at 826–27 (Saylor, J., opinion in support of reversal). I would also note that the Court's position insulating attorneys from the legislative proscriptions, unfortunately, gives rise to the appearance of preferential treatment.

Thus, I would reverse the order of the Commonwealth Court, and disapprove the supporting rationale from the line of Commonwealth Court precedent following *Pennsylvania PUC Bar Ass'n v. Thornburgh,* 62 Pa.Cmwlth. 88, 434 A.2d 1327 (1981), *aff'd per curiam,* 498 Pa. 589, 450 A.2d 613 (1982).

Justice NIGRO joins this dissenting opinion.