Edward G. **RENDELL**, Governor of Pennsylvania, and Michael DiBerardinis, Pennsylvania Secretary of Conservation and Natural Resources, Petitioners

v.

**PENNSYLVANIA STATE ETHICS COMMISSION, Respondent.**

Edward G. Rendell, Governor of Pennsylvania, and Kathleen A. McGinty, Pennsylvania Secretary of Environmental Protection, Petitioners

v.

Pennsylvania State Ethics Commission, Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 31, 2007.

Decided Dec. 19, 2007.

Ralph G. Wellington, Philadelphia, for petitioners.

Robin M. Hittie, Chief Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and COLINS, Judge, and McGINLEY, Judge, and SMITH-RIBNER, Judge, and FRIEDMAN, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

Kathleen A. McGinty (McGinty), Secretary of the Department of Environmental Protection (DEP), Michael DiBerardinis (DiBerardinis), Secretary of the Department of Conservation and Natural Resources (DCNR) (collectively Secretaries), and Governor Edward G. Rendell (Governor) (collectively Petitioners) seek both review in this Court's appellate jurisdiction and declaratory relief in its original jurisdiction regarding advisory opinions issued by the State Ethics Commission (Commission) pursuant to Section 1107 of the Public Official and Employee Ethics Act (Ethics Act), 65 Pa.C.S. § 1107.

By letter dated April 26, 2007, pursuant to Section 1107 of the Ethics Act, General Counsel Barbara Adams (Adams) requested an opinion or advice of counsel from the Commission regarding McGinty. The letter stated that DEP administered grant programs commonly known as Growing Greener I and II, and that the non-profit organization, the Pennsylvania Environmental Council (PEC), had received over $6.5 million in grants from DEP since 1995. The letter stated that DEP anticipated continuing to fund grants to PEC or to Enterprising Environmental Solutions,

Inc., an organization controlled and established by PEC. The letter also stated that McGinty's husband, Dr. Karl Hausker, had previously been asked to do consulting work on projects pursuant to DEP grants and that DEP anticipated that he would be invited to do so again. The letter further stated that the grants in question were awarded following an open, competitive process and that McGinty's role was limited to reviewing and approving a list of proposed grant awards, which had already been initially approved by other officials within DEP. The letter inquired whether these circumstances would give rise to a conflict of interest under the Ethics Act. In the letter Adams provided her own legal analysis explaining why McGinty's participation would not violate the Ethics Act.

By a separate letter, dated April 26, 2007, Adams requested an opinion or advice of counsel from the Commission regarding DiBerardinis. This letter stated that DCNR, through its Bureau of Recreation and Conservation, awarded numerous grants to non-profit organizations and municipalities. The letter stated that DiBerardinis's role in the grantmaking process is limited to reviewing the list of grants after the grantees have been selected and approved according to established criteria by DCNR officials. The letter further stated that one such grantee was the Pennsylvania Horticultural Society (PHS), a non-profit organization which had, so far, received $1.5 million for a tree cover program called "TreeVitalize." The letter also stated that DiBerardinis's wife, Joan Reilly, was one of 14 managers employed by PHS. Additionally, the letter stated that PHS had requested another $500,000 for its TreeVitalize program and inquired whether, under the circumstances outlined, it would present a violation of the Ethics Act for DiBerardinis to participate in the grantmaking process. In the letter

Adams provided her own legal analysis explaining why DiBerardinis's participation would not violate the Ethics Act.

On April 30, 2007, the Commission issued advisory opinions in response to Adams's letters. In the McGinty Opinion, Opinion 07–009, the Commission concluded that McGinty would have a conflict of interest if she participated in the grantmaking process. In reaching this conclusion, the Commission applied the Ethics Act to the scenario outlined in Adams's letter regarding McGinty. The Commission stated that the "conflict of interests" provision in the Ethics Act is to be liberally construed to promote public trust in government. The Commission stated that participation by McGinty in the grantmaking process would constitute use of her authority and that, because it was anticipated that her husband would be employed to work on projects as a result of the grant, this use would result in a private pecuniary benefit under the Ethics Act. The Commission also opined that, even if it was not anticipated that McGinty's husband would actually work on projects funded by the grants, a private pecuniary benefit would still accrue if clients of McGinty's husband received the grants. In response to an assertion in Adams's letter that intent was a requisite element of conflict of interest under the Ethics Act, the Commission stated that a conflict of interest could exist, even absent intent, according to this Court's decision in *Yocabet v. State Ethics Commission,* 109 Pa.Cmwlth. 432, 531 A.2d 536 (1987). The Commission also addressed the assertion in Adams's letter that the grant by DEP would have a *de minimis* economic impact on both the grantee and DEP and, therefore, would not give rise to a conflict of interest. The Commission noted that, although the letter had not specified the amounts of the prospective grants in question, it could con-

clude that since the amount of the grant would be sufficient to induce an applicant to apply for the grant, the grant would not be *de minimis*. The Commission also stated that the economic impact of the single prospective grant at issue should not be viewed in isolation, but in the context that one grant could likely lead to other future grants.

The Commission recommended that, in order to avoid the conflict of interest, the Governor could appoint a person outside McGinty's chain of command to perform her functions in the grantmaking process. The Commission stated that McGinty "would need to be removed/insulated from any involvement in the grant process in question, as well as any access to confidential/non-public information involving the grant process...." (McGinty Opinion 12.) The Commission also stated that McGinty "could not" select the person who would take her place in the grantmaking process.

In the DiBerardinis Opinion, Opinion 07–010, the Commission set forth an analysis which was substantially similar to that contained in the McGinty Opinion. In addition to the issues addressed in the McGinty Opinion, the Commission also concluded that a non-profit organization could be considered a "business" under the Ethics Act. The Commission concluded that it would be a conflict of interest for DiBerardinis to participate in DCNR's grantmaking process and recommended a mechanism similar to the one in the McGinty Opinion for avoiding the conflict.

The Governor and each Secretary subsequently filed a "Petition for Review in the Nature of an Appeal of an Opinion of the Pennsylvania State Ethics Commission and in the Nature of an Action for Declaratory Judgment" (DiBerardinis Petition

and McGinty Petition, respectively) with regard to each advisory opinion. In these petitions, the Governor and the Secretaries appealed from the advisory opinions and the Governor, alone, sought declaratory judgment regarding a number of issues raised in the opinions. The petitions sought appellate review of the advisory opinions in the name of the Governor and each respective Secretary, alleging that the Commission had committed errors of law and that the opinions would disrupt the effective administration of state government. The petitions sought, in the name of the Governor only, a declaratory judgment regarding these same alleged errors of law. In response, the Commission filed a Motion to Quash and Preliminary Objections, which are now before this Court.

■ In its Motion to Quash the appeal, the Commission argues that the advisory opinions in these cases are not appealable orders. We agree. In general, only *adjudications* of a Commonwealth Agency are appealable. *See* Section 702 of the Administrative Agency Law, 2 Pa.C.S. § 702 (stating that "[a]ny person aggrieved by an *adjudication* of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals ..." (emphasis added)). "Adjudication" is defined as "[a]ny *final* order, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to a proceeding in which the adjudication is made." Section 101 of the Administrative Agency Law, 2 Pa.C.S. § 101 (emphasis added).[1] We have held that

---

1. It is notable that Section 1108(i) of the Ethics Act does provide for appeals from certain decisions of the Commission, stating:

Any person aggrieved by an opinion or order which becomes final in accordance with the provisions of this chapter who has

advisory opinions of the Commission are not considered final, appealable orders. *Suehr v. State Ethics Commission,* 651 A.2d 648 (Pa.Cmwlth.1994). Here, the advisory opinions of the Commission are just that: advisory. They deal with events which have not yet occurred and which may never occur. This can be seen in the very language of the advisory opinions. For example, in the DiBerardinis Opinion, the Commission states:

> [t]he *prospective* grant to PHS *would* constitute a pecuniary benefit to PHS....
>
> ....
>
> Having concluded that the Secretary *would* have a conflict of interest with regard to the *proposed* DCNR grant to PHS, you are advised that the Secretary *would be* required to abstain fully from matters pertaining to the grant or to grant applications of competitors for the Program grant monies.

(DiBerardinis Opinion at 10 (emphases added).) The hypothetical nature of the facts underlying these cases is even more evident in the McGinty Opinion:

> we determine that the Secretary *would* have a conflict of interest with regard to *prospective* DEP grants to a non-profit organization where it is *anticipated* that the Secretary's husband *might* contractually provide consulting services to the grant recipient relative to the grant. However, there is a means by which the Secretary *would* be able to avoid transgressing Section 1103(a) of the Ethics Act as to such grants.

(McGinty Opinion at 10 (emphases added).) To make a decision on appeals of advisory opinions based on these sorts of hypothetical facts "would be to issue our own advisory opinion on the subject which is not within the purview of our appellate jurisdiction." *Suehr,* 651 A.2d at 649.

Under the Ethics Act, an official can request an advisory opinion which, if the official relies upon it, will provide immunity to that official even if the opinion turns out to be incorrect. *See* Section 1107(10) of the Ethics Act, 65 Pa.C.S. § 1107(10). In this case, the advisory opinions do not give the Secretaries the immunity they wanted under Section 1107(10), because the opinions do not opine that the Secretaries can participate in the grantmaking processes. However, these opinions do not impose new duties or obligations on the Secretaries,[2] or affect any personal or property right of the Secretaries. Petitioners argue that, pursuant to the Supreme Court's decision in *Shaulis v. State Ethics Commission,* 574 Pa. 680, 833 A.2d 123 (2003), the Commission's advisory opinions are final, appealable adjudications. We do not agree. In *Shaulis,* the advisory opinion appealed from effectively infringed on Shaulis's constitutionally protected and vested property interest in pursuing her profession, the practice of law.[3]

---

direct interest in such opinion or order shall have the right to appeal therefrom in accordance with law and general rules. 65 Pa.C.S. § 1108(i). However, Section 1108 is titled "Investigations by commission," and its other subsections deal with investigations and inquiries made pursuant to complaints to the commission. In this context, it does not appear that Section 1108(i) was intended to apply to advisory opinions like those at issue in this case.

**2.** Although they do clarify the Secretaries' existing duties. *See* Section 1107(10), stating that the Commission shall, "[i]ssue to any person upon such person's request ... an opinion with respect to such person's duties under [the Ethics Act]." 65 Pa.C.S. § 1107(10).

**3.** *Shaulis* was a very unusual case in that it called upon the Supreme Court to, once again, defend its exclusive jurisdiction under the Pennsylvania Constitution over the regula-

In this case, no such property interest is involved. It is also notable that, in *Shaulis,* the Supreme Court specifically declined to overturn *Suehr,* which held that advisory opinions of the Commission are not final, appealable orders. After discussing the Commission's reliance on *Suehr,* the Court stated that "Shaulis counters that *Suehr* was wrongly decided and should be overruled by this Court, but we need not address that argument." *Shaulis,* 574 Pa. at 690, 833 A.2d at 129.

We will follow the example of our Supreme Court and similarly decline to overrule *Suehr.* In *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 37, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), the United States Supreme Court stated that, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Id.* This principle is equally fundamental to Pennsylvania's system of government. If this Court were to begin issuing decisions not based on specific sets of established facts, we would usurp the legislative function that is vested by our state constitution solely in the legislature. Pa. Const. art. 2, § 1. Similarly, if this Court were to give broad, general instructions on the application and execution of the Ethics Act, we would become not a "super legislature" but a "super Ethics Commission"; we would usurp the executive function. *See* Pa. Const. art. 4, § 2. This Court must be diligent in confining itself to its constitutional limitations. For these reasons we follow *Suehr* and find that these advisory opinions are not final. We must, therefore, grant the Commission's Motion to Quash.

▮▮▮▮ In addition to the appeal of the Commission's Opinions, the Governor, alone, has also filed an action for declaratory judgment in our original jurisdiction. Courts generally should refuse to grant requests for declaratory judgment where it would not resolve the controversy or uncertainty which spurred the request. Section 7537 of the Declaratory Judgments Act, 42 Pa.C.S. § 7537.[4] "In order to sustain an action under the Declaratory Judgments Act, a plaintiff must demonstrate an 'actual controversy' indicating imminent and inevitable litigation, and a direct, substantial and present interest." *Stilp v. Commonwealth,* 910 A.2d 775, 782 (Pa. Cmwlth.2006) (quoting *Wagner v. Apollo Gas Co.,* 399 Pa.Super. 323, 582 A.2d 364 (1990)). To require otherwise would result in this Court issuing advisory opinions, which is beyond our jurisdiction to do. *Sheppard v. Old Heritage Mutual Insurance Co.,* 51 Pa.Cmwlth. 490, 414 A.2d 1109, 1114 (1980) (concluding in this original jurisdiction case involving an insurance liquidation, that "this Court is not in the business of making advisory decisions" and would not address a hypothetical issue as "to set-off for wage obligations to corporate officers", noting that "[o]ne need only refer to this Commonwealth's insurance

tion of the practice of law. The Commission's advisory opinion in *Shaulis* was contrary to the Supreme Court's decision in *Gmerek v. State Ethics Commission,* 569 Pa. 579, 807 A.2d 812 (2002). In *Gmerek,* an evenly-divided Supreme Court upheld this Court's decision that a statute regulating lobbying also regulated the practice of law and, therefore, infringed on the Supreme Court's exclusive jurisdiction. Even though the Supreme Court was evenly split on whether to uphold the statute regulating lobbying in *Gmerek,* both sides were united in upholding that Court's exclusive jurisdiction over the practice of law under Article V, Section 10 of the Pennsylvania Constitution.

4. Section 7537 states, "[t]he court may refuse to render or enter a declaratory judgment or decree ,where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding...." 42 Pa.C.S. § 7537.

laws to determine the appropriate powers and responsibilities of the Court-appointed liquidator"); *see also In re Condemnation by Department of Transportation,* 100 Pa. Cmwlth. 546, 515 A.2d 102, 106 (1986) (relying on *Sheppard* to conclude that "Advisory opinions are not within the purview of an appellate court's jurisdiction."); *see generally, Blackwell v. State Ethics Commission,* 527 Pa. 172, 185, 589 A.2d 1094, 1100 (1991) ("Judicial decisionmaking inherently requires courts to resolve conflicts after they arise") (quoting *Gibson v. Commonwealth,* 490 Pa. 156, 163, 415 A.2d 80, 84). While the Governor requests declaratory judgment on ten issues in his Petitions for Relief,[5] most of these issues depend upon the unfolding of hypothetical facts that may never occur.[6] As such, they do not present this Court with a concrete case or controversy and, so, making declaratory judgments as to these issues

---

5. In his action for declaratory judgment, the Governor argues that:

(a) the Commission erred in determining that the Secretary would have a conflict of interest under the Ethics Act under the facts presented in the Request for Opinion;

(b) the Commission is to administer the conflict of interest provision of the Ethics Act in a manner that provides clear guidance to public officials and public employees subject to the Ethics Act;

(c) the Secretary's review of the final list of recommended ... grant awards does not constitute the use of the authority of [his or her] office for private pecuniary benefit under the Ethics Act;

(d) the awarding of a grant to a public official's immediate family member or a business with which an immediate family member is associated does not constitute the use of the public official's authority of his office for a private pecuniary benefit to the immediate family member or the business if the purpose of the use of such authority was not to provide such a benefit to the immediate family member or the business;

(e) a non-profit entity is not a "business" under the Ethics Act;

(f) a public official or public employee need not "abstain fully" from any role in a grant award process simply because an entity that employs an immediate family member applies for such grants;

(g) a public official's or public employee's use of the authority of his office that happens to result in a private pecuniary benefit to an entity that employs an immediate family member does not constitute a conflict of interest under the Ethics Act, if the public official or public employee did not intend to use his office to provide a private pecuniary benefit to the entity that employs his immediate family member;

(h) grants awarded by an administrative department of the Commonwealth that constitute a relatively small portion of a grant recipient's budget may have a *de minimis* economic impact on such recipients;

(i) the Governor need not designate someone outside a department head's chain of command to carry out the department head's role in the grant award process in order to avoid conflicts of interest affecting the department head;

(j) public officials and public employees do not have a duty to investigate and discover every business relationship of their immediate family members, including for-profit and non-profit entities of which the immediate family member is a director, officer, owner or employee....

(DiBerardinis Petition at 16–17.) The language in the McGinty Petition is substantially similar, with the exception of subsection (c), which reads "the Secretary's minimal involvement in the Growing Greener grant award process does not constitute the use of the authority of her office for private pecuniary benefit under the Ethics Act," and (e), which reads:

the client or customer of a public official's or public employee's immediate family member is not a business associated with that family member, and therefore, compensation paid to the family member or a business with which the official or employee is associated by a client or customer who receives a grant does not constitute a private pecuniary benefit to such family member or business under the Ethics Act.

(McGinty Petition at 19–20.)

6. For example, with regard to the Governor's first and third contentions, (a) and (c) on his list, the Secretaries have so far *not* participated in the grantmaking processes at issue in

would not resolve the underlying uncertainty. Therefore, pursuant to Section 7537 of the Declaratory Judgments Act, we must decline to render a judgment regarding these issues.[7]

Two of the issues that the Governor raises, however, do present us with clear questions of statutory construction about which there is an actual controversy. The first of these issues is whether a non-profit organization may be included in the definition of "business" found in Section 1102 of the Ethics Act, 65 Pa.C.S. § 1102. The other is whether, when a department head is affected by a conflict of interest, the Ethics Act requires the Governor to appoint a person outside that department head's chain of command in order for the conflict to be avoided. As we may answer these questions without resort to hypothetical facts that may never occur, we find that these issues present us with concrete controversies, especially given the expressed difference of interpretation between the Commission, which is charged

with enforcing the Ethics Act, and the Governor, who is, along with his subordinates, subject to the Ethics Act.

The Commission raises preliminary objections on two bases to the Governor's action for declaratory judgment. First, the Commission argues that the Governor may not both appeal the advisory opinions and seek declaratory judgment regarding them; however, since we have found that the advisory opinions are not appealable adjudications, he will not receive more than one form of relief.

■ Second, the Commission argues that the Governor's action for declaratory judgment seeks relief for non-parties for whom no true case or controversy exists. The Governor has alleged that his action for declaratory judgment is for "the thousands of public officials and public employees subject to the Ethics Act."[8] We find no true case or controversy as to these thousands of unnamed individuals, and thus sustain this part of the Commission's preliminary objections. Any advisory

these cases. The determinations the Governor asks us to make are fact-specific ones which would depend on the facts as they occurred, not as they might occur. Some of the issues upon which the Governor asks us to make declaratory judgments are not even supported by the hypothetical facts outlined in these cases. For example, neither the seventh and tenth issues presented by the Governor, issues (g) and (j), are present in these cases because the Secretaries are aware of their spouses' involvement with the potential grantees, nor is the issue of whether grants may *ever* be *de minimis* presented where, in McGinty's case, the request letter did not set forth the amount of the grant at issue and, thus, the Commission would have had no basis upon which to determine that the grant might be *de minimis*. Likewise, the question of whether the Ethics Act is to be strictly or narrowly construed is not an issue that should be decided in a general fashion, upon the basis of hypothetical facts. We note that in *Maunus v. State Ethics Commission*, 518 Pa. 592, 600, 544 A.2d 1324, 1328 (1988), the Pennsylvania Supreme Court stated that the

Ethics Act was to be liberally construed as remedial legislation.

7. Such refusal is within this Court's discretion. *See County of Allegheny v. Department of Public Welfare*, 53 Pa.Cmwlth. 318, 416 A.2d 1175, 1177 (1980).

8. (DiBerardinis Petition 15–16; McGinty Petition 18–19.) In both Petitions the Governor states:

In its Opinion, the Commission has erroneously declared the rights and duties of the Secretary, and, by implication, the rights and duties of thousands of other public officials and public employees subject to the Ethics Act, including those under the Governor's jurisdiction

The uncertainty and insecurity created by the Commission's Opinion will continue unless this Court declares the rights, status and other legal relations of the Secretary under the Ethics Act, thereby removing this uncertainty and insecurity for the Secretary, as well as the thousands of other public officials and public employees subject to

opinion by the Commission will affect persons situated similarly to those about whom the opinion was written. This does not give those similarly-situated persons standing to seek declaratory judgment regarding those opinions any more than a person situated similarly to a party to a precedent-setting lawsuit may seek declaratory judgment regarding the suit's outcome.

██ The Governor is the appointing authority for the two Secretaries, and we find that he does present us with a case or controversy as to the Secretaries. We therefore overrule the Commission's preliminary objections to the extent they argue the Governor lacks standing. Section 1107(10) of the Ethics Act states that the Commission shall "[i]ssue to any person upon such person's request *or to the appointing authority ... of that person upon the request of such appointing authority ...* an opinion...." 65 Pa.C.S. § 1107(10) (emphasis added). As the appointing authority for the Secretaries, the Governor has standing to seek declaratory judgments regarding their conduct under the Ethics Act.

Accordingly, for the reasons discussed above, the Commission's Motion to Quash is hereby granted, the Commission's Preliminary Objections are overruled in part and sustained in part, and we will allow the Governor's action for declaratory judgment to move forward as to the following issues: (1) whether non-profit organizations may be included by the definition of "business" in Section 1102, and (2) whether, when a department head is affected by a conflict of interest, the Ethics Act requires the Governor to appoint a person outside that head's chain of command in order for the conflict to be avoided.[9]

the Ethics Act, including those under the Governor's jurisdiction.
(DiBerardinis Petition 15–16; McGinty Petition 18–19.)

## ORDER

**NOW,** December 19, 2007, Respondent's Motion to Quash is hereby granted, Respondent's Preliminary Objections are overruled in part and sustained in part, and the Governor's action for declaratory judgment is allowed to proceed consistent with this Opinion. Respondent is directed to file answers to the petitions filed by Petitioners within thirty (30) days of the date this order.

9. We note that there have been no dispositive motions in the declaratory judgment action permitting a disposition on the merits at this time.